716 So.2d 428 (1998)
PARISH OF JEFFERSON
v.
Oscar DAVIS, Jr.
Nos. 97-CA-1200, 97-CA-1201.
Court of Appeal of Louisiana, Fifth Circuit.
June 30, 1998.
Rehearing Denied September 17, 1998.
*429 Jacob Kansas, New Orleans, Ronald J. Gillen, Assistant Parish Attorney, Metairie, for defendant-appellant.
Hervin A. Guidry, New Orleans, for defendant-in-reconvention appellee.
Byrne W. Dyer, III, Gretna, intervenorappellee.
Before GRISBAUM, GAUDIN and DALEY, JJ.
GRISBAUM, Chief Judge.
This consolidated appeal arises from a zoning permit dispute. We affirm.

ISSUE
The sole issue presented is whether Oscar Davis, Jr. (the defendant-appellant) acted in bad faith in obtaining a permit to build an additional floor to an accessory building.

FACTS AND PROCEDURAL HISTORY
Oscar Davis, Jr. is the owner of a single family residence located at 3732 Academy Drive, Metairie, Louisiana. In 1990, soon after Mr. Davis purchased the property, he wanted to build a garage on his property. Because the square footage and height of the garage was to exceed the zoning ordinances of Jefferson Parish, Mr. Davis applied for a variance with the Jefferson Parish Zoning Appeals Board (the ZAB). The zoning ordinances *430 of Jefferson Parish allow accessory buildings in a residential area to be built to a height of 13 feet and a square footage limit of 800, unless a variance is granted.[1] Mr. Davis' application asked for a variance allowing him to build a two-story accessory building,15 feet in height and with 960 square feet. Mr. Davis desired the variance in height so he could build an additional floor to the garage.
A public hearing on his application, Case No. E-379, was held on March 26, 1990. At that hearing, the chairman voiced concern that the space would be used as living area. Mr. Davis confirmed that the downstairs would be the garage and that the upstairs would be for storage use only. Mr. Davis was also told that he would not be able to stand up on the second floor of the building because the requested 15 feet would be inadequate. There was also considerable debate among the board members regarding the adequacy of this height. Although Mr. Davis' request was ultimately granted, he was informed during the hearing that, if he could not stand on the second level, that would be his problem. Furthermore, Mr. Davis was told that he would be required to appeal to the Board of Standards to build a second story in an accessory building.
After receiving his request, Mr. Davis realized that the 15-foot variance granted was insufficient to allow him to utilize the second story as intended. Mr. Davis did not contact the Board of Standards but, instead, contacted the Zoning Appeals Office. Mr. Davis was told he could not re-apply for another variance until two years had passed; however, the Jefferson Parish Office of Inspection and Code Enforcement (Office of Inspection and Code Enforcement) might have suggestions or solutions.
Mr. Davis contacted John Boudreaux, Director of Inspection and Code Enforcement, and explained his dilemma. Apparently, Mr. Boudreaux instructed Mr. Davis to submit new plans to his office and that a hearing would be waived. Mr. Davis submitted plans to Mr. Boudreaux's office for a building with an 18-foot height containing 960 square feet, which was subsequently granted and approved. On May 14, 1990, the Office of Inspection and Code Enforcement issued Mr. Davis permit No. 512-90, and Mr. Davis commenced in the building of his structure accordingly.
Ms. Lynn Parker, head of the Bissonet Civic Association, and several of Mr. Davis' neighbors, opposed the constructed building and complained to Jefferson Parish (the Parish). On July 24, 1990, the Office of Inspection and Code Enforcement issued Mr. Davis a stop work order. However, Mr. Davis had already poured the slab and completed the framing and sheathing of the building by this time. The actual height of the building is 19 feet and six inches at the midline and measures 20 feet and six inches at the peak of the roof. On October 25, 1990, the Parish filed suit to enforce the stop work order and to seek an order requiring Mr. Davis to bring the building into compliance with the judgment rendered by the ZAB on March 26, 1990, Case No. E-379.
On January 22, 1991, Mr. Davis returned to the ZAB to request a variance in order to tie the building into his house structure in an attempt to eliminate the height violation. However, at the hearing held on February 11, 1991, Case No. E-543, the ZAB denied this request finding "this proposed attached two-story garage for living area in the required rear yard with insufficient rear yard area simply does not conform to this neighborhood." The ZAB noted its previous judgment on March 26, 1996 and stated that "they were unanimously opposed to granting anything more than what was stated on that original appeal application for Case # E-379."
On March 20, 1991, Mr. Davis filed an answer and reconventional demand to the Parish's petition. In his reconventional demand, Mr. Davis sought damages in the amount of $16,500.00, which he asserted was the cost of bringing the building into compliance with the variance granted to him by the ZAB. Mr. Davis then applied for a variance to conform to the size of the building as built. At the hearing held on June 15, 1992, Case No. E-776, the ZAB again denied the request *431 and stated that the original variance of 15 feet and 960 square feet was to be maintained.
On July 15, 1992, Mr. Davis filed his own petition complaining that the ZAB's refusal to extend his variance is unjust and unconscionable in that the Parish issued him a building permit, allowed him to build an 18foot high garage, and that the stop work order should be lifted. Mr. Davis also pled, in the alternative, that he should be awarded damages for the cost of reconstructing or changing the existing building, the cost of obtaining substitute storage space, and a loss in property value. The two cases were consolidated for trial on April 28, 1993. The Bissonet Civic Association, Inc. and various residents of the Bissonet Subdivision, where Mr. Davis' residence is located, filed a petition in intervention on June 3, 1994 to pray that the ZAB decision in Case No. E-379 be enforced.
Trial on the main demand commenced on April 19, 1995. The parties and the court agreed that Mr. Davis' reconventional demand for damages would be tried at a later date. The trial on the main demand concluded on November 20, 1995. Trial on the reconventional demand for damages was held on January 9, 1997. On April 3, 1997, the trial court rendered judgment in favor of Mr. Davis on the reconventional demand and against the Parish in the amount of $16,500.00. On June 3, 1997, the trial court rendered a second judgment on the main demand, directing Mr. Davis to comply with the decision of the ZAB and to reduce the height of the building to 15 feet. Mr. Davis was not served with the June 3, 1997 judgment until June 25, 1997. On July 9, 1997, Mr. Davis filed a motion for appeal.

PRELIMINARY MATTERS
We find in the record a judgment by the trial court signed on November 3, 1997 dismissing this appeal, which was initially granted on July 9, 1997. However, this judgment does not automatically dismiss this appeal from our Court for lack of jurisdiction. Our statutory rules divests the jurisdiction of the trial court and attaches to our Court on the granting of the order of appeal and the timely filing of the appeal bond, in the case of a suspensive appeal, or on the granting of the order of appeal, in the case of a devolutive appeal. La.Code. Civ. P. art.2088. Therefore, we must determine which was filed, a suspensive or a devolutive appeal, and whether it was filed timely in order to assess whether the district court lacked jurisdiction after it signed the order of appeal.
We first address the issue of whether appellant filed a timely appeal. We note that a motion and order to dismiss appeal was filed by the intervenor-appellee, which was referred to the merits and will, therefore, now be addressed. Intervenor argues that appellant failed to perfect a suspensive appeal because the required bond was not filed within the delay authorized by law. The Parish contends that appellant did not timely appeal from the judgment awarding him damages on his reconventional demand.
The record shows that two judgments were rendered in this consolidated case. On April 3, 1997, the trial court ruled on the reconventional demand and found in favor of appellant and awarded him damages of $16,500.00 with legal interest. On June 3, 1997, the trial court rendered judgment on the main demand affirming the ZAB's decision in Case No. E-379, finding that appellant constructed a building exceeding the variance and ordering appellant to reduce the height of the building to 15 feet in accordance with the variance.
Appellant argues that the trial court had no authority to render two separate judgments in this action because separate judgments are not appropriate where trial is bifurcated between liability and damages. However, this is not a case where such a bifurcation took place, rather, this is a case where appellant's reconventional demand for damages was tried separately from the Parish's main demand. Our statutory law provides that the main demand may be tried separately from the reconventional demand. Specifically, La.Code Civ. P. art. 1038 provides:
The court may order the separate trial of the principal and incidental actions, either on exceptions or on the merits; and after adjudicating the action first tried, *432 shall retain jurisdiction for the adjudication of the other.
When the principal and incidental actions are tried separately, the court may render and sign separate judgments thereon. When in the interests of justice, the court may withhold the signing of the judgment on the action first tried until the signing of the judgment on the other.
Therefore, appellant's argument that the trial court was not authorized to issue separate judgments is without merit
The Parish is correct in arguing that appellant did not timely appeal from the judgment awarding him damages on his reconventional demand, which was rendered on April 3, 1997. Appellant's motion for appeal, filed on July 9, 1997, was 61 days after the April 3,1997 motion for partial new trial judgment was dismissed. However, appellant does not lose his right to appeal from the June 3, 1997 judgment on the main demand.
Appellant's motion for appeal was within the 30-day delay for the filing of a suspensive appeal from the June 3, 1997 judgment. Intervenor argues that appellant failed to perfect a suspensive appeal because the required bond was not filed within the delay authorized by law.
La.Code Civ. P. art. 2123, in pertinent part, provides:
A. Except as otherwise provided by law, an appeal that suspends the effect or the execution of an appealable order or judgment may be taken, and the security therefor furnished, only within thirty days of
Any of the following:
(1) The expiration of the delay for applying for a new trial or judgment notwithstanding the verdict, as provided by Article 1974 and Article 1811, if no application has been filed timely.
(2) The date of the mailing of notice of the court's refusal to grant a timely application for a new trial or judgment notwithstanding the verdict, as provided under Article 1914.
(Emphasis added.)
Although appellant timely filed the motion of appeal within the time delay for a suspensive appeal, La.Code Civ. P. art. 2124 requires that both the appeal be timely filed and the security be timely posted. Intervenor is correct in asserting that appellant's posting of the bond was well after the 30-day delay but incorrect in arguing that this appeal should be dismissed because the bond was posted after the 60-day delay for filing of a devolutive appeal. First, La.Code Civ. P. art. 2124(A) provides that "[n]o security is required for a devolutive appeal." Furthermore, since the elimination of the requirement of a bond for devolutive appeals, we have consistently held that, while the suspensive appeal must be dismissed for failure to file the required bond, the appeal should be converted to a devolutive appeal as long as the appellant has met those requirements. Brown v. Brown, 618 So.2d 451 (La. App. 5th Cir.1993), writ denied, 620 So.2d 881 (La.1993); Jones v. Gillen, 564 So.2d 1274 (La.App. 5th Cir.1990), writ denied, 568 So.2d 1080 and 568 So.2d 1081 (La.1990).
Since the appeal first filed as suspensive meets the requirements for perfection of a devolutive appeal, as provided for by La. Code Civ. P. art.2087, and a security bond is not required for a devolutive appeal, the appeal is hereby converted to a devolutive appeal. Finding that this appeal is devolutive, the jurisdiction of the trial court divested on the granting of the order of appeal on July 9,1997. Consequently, we find that the trial court is without authority to dismiss this appeal. Therefore, the November 3, 1997 judgment to dismiss the appeal is invalid and is set aside.
Finally, in its motion to dismiss, intervenor also argues that appellant has lost his right to appeal because he acquiesced in and consented to the judgment of November 20, 1995, conceding to the court's ruling that appellant built his ancillary building in excess of the height allowed by the variance granted to him by the ZAB Judgment No. E-379. Upon careful review of the record, we fail to discern any evidence of a consent judgment. *433 During the trial, the trial court stated that it was going to adopt the ruling of the ZAB and that the only issues to be resolved were whether appellant violated the ruling of the ZAB by exceeding the height limit of 15 feet and any damages entitled. Appellant did not openly agree to comply with the building code. Rather, appellant only stipulated to what was necessary in order for compliance. Therefore, intervenor's argument that a consent judgment existed is without merit.

LAW AND ANALYSIS
We are called upon to determine one basic issue: whether appellant acted in bad faith in obtaining a building permit to build an additional floor to his accessory building.
Our Court recognizes that a prima facie presumption of validity attaches to zoning board actions. Prescott v. Parish of Jefferson, 96-1058 (La.App. 5th Cir. 4/9/97), 694 So.2d 468. A reviewing court cannot substitute its own judgment. It cannot interfere absent a showing by the appellant or relator that the Board was arbitrary and capricious or abused its discretion. Papa v. City of Shreveport, 27,045 (La.App.2d Cir. 9/29/95), 661 So.2d 1100, writ denied, 95-2544 (La.1/5/96), 666 So.2d 295. On appeal, a person who opposes a zoning board's decision bears the burden of proof that the decision was arbitrary, capricious and unreasonable. Prescott, supra.
Normally, the determinative question in zoning board actions is whether appellant carried his burden of proof that the zoning board acted arbitrarily. See Pierce v. Parish of Jefferson, 95-719 (La.App. 5th Cir. 1/17/96), 668 So.2d 1153; Barreca v. Parish of Jefferson, 95-14 (La.App. 5th Cir. 4/25/95), 655 So.2d 403; Guenther v. Zoning Appeals Board, Parish of Jefferson, 542 So.2d 612 (La.App. 5th Cir.1989), writ denied, 544 So.2d 407 (1989); and Merrihue v. St. Charles Parish Planning & Zoning Dep't., 496 So.2d 1232 (La.App. 5th Cir.1986), writ denied, 497 So.2d 1019 (La.1986).
However, this case is distinguishable from the above-cited cases because appellant's variance was granted; thus, appellant is not contesting the validity of the ZAB's actions. Rather, appellant is urging that he was entitled to rely on the permit issued by the Office of Inspection and Code Enforcement. Specifically, appellant relies on the language in Dunn v. Jefferson Parish, 256 So.2d 664 (La.App. 4th Cir.1972), writ denied, 256 So.2d 382, which states:
"It has been generally held that a municipal building permit or license may not arbitrarily be revoked by municipal authorities, particularly where, on the faith of it, the owner has incurred material expense. Such a permit has been declared to be more than a mere license revocable at the will of licensor. When, in reliance thereon, work upon the building is actually commenced and liabilities are incurred for work and material, the owner acquires a vested property right to the protection of which he is entitled."
Id. at 667 (quoting 13 Am.Jur.2d, Buildings § 10). However, our jurisprudence has also stated that "`[t]he mere fact that a building permit was issued in error and contrary to the laws of the City does not vest an irrevocable right to proceed under that permit contrary to subsequent action cancelling the permission previous[ly] granted.'" Nassau Realty Co., Inc. v. City of New Orleans, 221 So.2d 327, 330 (La.App. 4th Cir.1969) (quoting the trial judge's Reasons for Judgment). See also Cross v. City of New Orleans, 446 So.2d 1253 (La.App. 4th Cir.1984), writ denied, 449 So.2d 1359 (La.1984); and Pailet v. City of New Orleans, et al, 433 So.2d 1091 (La.App. 4th Cir.1983), writ denied, 440 So.2d 757 (La.1983).
From the facts and circumstances presented, we discern that appellant is entitled only to the 15 feet in height variance, which was granted by the ZAB Judgment No. E-379 rendered on March 26,1990. It is clear from the record that there was misrepresentation on the part of appellant in obtaining a permit to built an additional floor to his accessory building.
Initially, appellant followed the proper procedure to obtain a variance by applying to the ZAB. After a hearing, the ZAB granted appellant's request. However, then the appellant disregarded the appeals process of the ZAB judgment and sought an alternative method to modify his existing variance by *434 contacting John Boudreaux, Director of Inspection and Code Enforcement. Although appellant contends that he did so upon the advice of someone from the Zoning Appeals Office, appellant was instructed at the conclusion of the first hearing that he would be required to contact the Board of Standards before he built a second floor to his building, but he never did.
Nevertheless, appellant claims he is entitled to rely on the modified permit because Mr. Boudreaux had the legal and apparent authority to modify the variance granted by the ZAB. We note that, although Mr. Boudreaux approved a height of 18 feet, the building as constructed currently stands at 19 feet and six inches. We will not address this question of authority because assuming that, in arguendo, Mr. Boudreaux had this authority to modify the permit, appellant consciously and intentionally built his building in disregard of the modified permit.
Next, we also dismiss appellant's argument that compliance with the granted variance is unnecessary, excessively burdensome, and a hardship. This is not a case where appellant has sustained a loss and has been subjected to undue hardship through no fault of its own. See Dunn, supra and Nassau Realty, supra. It must be recalled that appellant was the one who asked for the 15-foot variance. At the hearing, there was considerable discussion about the adequacy of this height; however, appellant insisted that 15 feet was sufficient. Then when he was granted a modified variance by the Office of Inspection and Code Enforcement, appellant still failed to comply with the modified permit. If a hardship is created, it is clear that this hardship is one created by the appellant's own actions.
Finally, we specifically address the contradiction in appellant's request that compliance with the variance is unnecessary and that, instead, he should be allowed to connect the building to the main structure of the house to become a living area, install a kitchen, and to utilize the space for additional purposes. At each stage of these proceedings, appellant insisted that the second floor of the accessory building was to be used for storage, primarily his antiques. By presenting this argument, it would appear to this Court that the ZAB and the Bissonet Plaza residents' concern that appellant intended from the beginning to build a second floor to his accessory building for the purpose of creating a living area is confirmed. When the ZAB, on March 26, 1990, approved the 15-foot variance, it granted appellant his request with the understanding that appellant wanted to build additional storage area and not living quarters. When appellant later requested to tie this building to the main structure of his house to eliminate the height requirement, again the ZAB opposed an attached two-story garage for living area. Now, appellant attempts to ask our Court to grant him this request in order to build a living area, in contravention of the ZAB and the trial court. Consequently, this admission supports our finding that appellant has misrepresented his intentions in building the second floor to his accessory building.
In Lakeshore Property Owners Assoc. v. City of New Orleans, et al, 481 So.2d 162 (La.App. 4th Cir.1985), writ denied, 484 So.2d 674 (1986), the court found that there was misrepresentation by the building permit holder, who had agreed to conform with the title restrictions, as evidenced by his plans, but did not. Therefore, the court held that the city was correct in issuing a cease and desist order to stop construction of the structure. However, the court did not order that the entire structure be destroyed but only ordered that those portions of the addition in violation of the title restrictions be removed. Id.
Following this rationale, we not only refuse to grant appellant's request but, rather, we conclude that the trial court was correct in affirming the decision of the ZAB that the height of the building is to be maintained at 15 feet, which is sufficient for storage. Since appellant has failed to show that the ZAB was arbitrary, capricious, or abused its discretion, we will not substitute our own judgment.
Finally, appellant alleges that, not only did the trial court improperly order him to comply with the zoning requirement, his award of $16,500.00 granted in his reconventional demand is not sufficient to reduce the height of the entire structure to 15 feet. *435 Because appellant's loss is through fault of his own, he does not have a just grievance against the Parish, who erroneously issued a permit upon which it relied. See Cross v. City of New Orleans, supra; Dunn, supra.
For the reasons stated above, we find that appellant is not entitled to an additional award in damages to comply with the trial court's order. However, appellant is entitled to the $16,500.00 award because neither party appealed the judgment of the reconventional demand.
For the foregoing reasons, trial court's judgment upholding the decision of the ZAB is affirmed.
AFFIRMED.
NOTES
[1] Jefferson Parish Comprehensive Zoning Ordinance No. 7530.