924 So.2d 196 (2005)
Jennifer J. CLEMENT
v.
David F. GRAVES.
No. 2004 CA 1831.
Court of Appeal of Louisiana, First Circuit.
September 28, 2005.
*198 Jean-Paul Robert, Sr., Baton Rouge, for Plaintiff/Appellee, Jennifer J. Clement.
Rodney N. Erdey, Denham Springs, for Defendant/Appellant, David F. Graves.
Before: WHIPPLE, McCLENDON and WELCH, JJ.
WHIPPLE, J.
Defendant appeals a judgment in favor of plaintiff awarding her damages and attorney's fees resulting from defendant's breach of an agreement to purchase plaintiff's home. For the following reasons, we affirm.

FACTS AND PROCEDURAL HISTORY
On January 29, 2003, plaintiff, Jennifer Clement, and defendant, David Graves, entered into an agreement to purchase and sell, whereby plaintiff agreed to sell her home in Denham Springs, Louisiana, to defendant for the sum of $84,900.00, with the act of sale to be passed on or before February 21, 2003. After defendant's financing was approved, the closing date for the sale was set for February 21, 2003. However, defendant did not attend the scheduled closing, and the sale was not consummated.
Thereafter, on March 3, 2003, plaintiff filed suit against defendant for specific performance of the purchase agreement pursuant to LSA-C.C. art. 2623 or, in the alternative, for damages caused by defendant's alleged breach of the agreement. Defendant answered and filed a reconventional demand, contending that his decision not to proceed with the final purchase of the property was based on, among other things, plaintiff's failure to fulfill all contractual terms and provisions.
At the bench trial in this matter, plaintiff testified that on February 17, 2003, four days before the scheduled closing, defendant called her and told her that he would not be able to purchase the house *199 because he and his girlfriend were "having problems" and that his girlfriend was not going to give him her income tax refund to use for closing costs. According to plaintiff, when she then offered to attempt to work out some type of agreement with defendant, he told her "point blank" that even if he could come up with the money, he would not close on the house because he had no one to start a family with.
Defendant, on the other hand, while acknowledging that he and his girlfriend were having problems at that time, denied that their relationship problems were a "major reason" why he decided not to purchase the house. Rather, defendant contended that the four primary reasons that he decided not to go through with the purchase of the house were that: (1) although the purchase agreement required plaintiff to provide him with a property condition disclosure statement within twenty-four hours of the signing of the agreement, she had failed to provide him with such a statement; (2) plaintiff did not provide him with a termite inspection certificate prior to the date of the scheduled closing; (3) he realized that the area where the house was located was "kind of like a crime infested area"; and (4) some problems were noted with the house as the result of a property inspection that he requested.
When asked at trial whether she had provided defendant with a property condition disclosure statement within twenty-four hours of the signing of the purchase agreement, plaintiff acknowledged at trial that she could not answer truthfully whether or not she had provided defendant with this document. However, with regard to the termite inspection certificate, plaintiff explained that she had had a termite inspection performed which did not disclose any termite damage and that the termite inspection certificate was available for defendant at the scheduled closing, as required by the purchase agreement. With regard to the problems disclosed in the property inspection report, plaintiff noted that the inspection, which was performed on February 11, 2003, revealed no major problems with the house Moreover, defendant acknowledged that he had never requested that plaintiff repair any of the problems discovered by the inspection.[1]
At the conclusion of trial, the trial court concluded that defendant, not plaintiff, had breached the purchase agreement in failing to go through with the act of sale. Regarding the problems listed in the inspection report, the trial court noted that these problems were readily apparent and that defendant could have discovered these problems upon mere inspection of the premises. Also, regarding defendant's contentions that he had learned that the area was unsafe, the trial court likewise concluded that defendant had the obligation to find out about the area prior to entering into an agreement with plaintiff. The trial court further noted that the termite inspection certificate is a document that is provided at the closing. Accordingly, the court did not find plaintiff's failure to provide the certificate to defendant prior to closing to constitute any breach by plaintiff. Finally, with regard to the property *200 condition disclosure statement, the trial court found that while plaintiff may not have "dot[ted] every `I' and cross[ed] every `T'," this was not enough to warrant cancellation of the purchase agreement.
The trial court further found that plaintiff suffered damages due to defendant's breach in the amount of $3,500.00, plus $1,500.00 in attorney's fees.[2] From the May 17, 2004 judgment in accordance with the trial court's reasons, defendant appeals.
On June 13, 2005, while this matter was pending on appeal, plaintiff filed a "Motion to Supplement Record on Appeal and Dismiss Suspensive Appeal." In the motion, plaintiff contended that defendant had failed to post an appeal bond as ordered by the district court and, thus, that defendant's appeal should be dismissed. Plaintiff sought to have the appellate record supplemented with motions and related orders of the district court ordering defendant to post bond and subsequently ordering dismissal of the appeal. Plaintiff further sought to have this court dismiss the instant appeal at defendant's costs, or, in the alternative, to lift the automatic stay suspending execution of the trial court's judgment.
By order dated June 21, 2005, this court granted plaintiff's motion to supplement the appellate record with the motion to dismiss filed below and the subsequent order signed by the district court. The remaining requests for relief were referred to the merits of the appeal and will be addressed herein.

MOTION TO DISMISS SUSPENSIVE APPEAL
In the motion, plaintiff requests that defendant's suspensive appeal be dismissed due to defendant's failure to post bond and, in the alternative, that the automatic stay on execution of the trial court's judgment be lifted. Also, plaintiff seeks attorney's fees and costs for defending the appeal pursuant to LSA-C.C.P. art. 2164.
In a suspensive appeal, the appellant must both file a petition for appeal and furnish the security within the delay allowed in LSA-C.C.P. art. 2123. Wright v. Jefferson Roofing, Inc., 93-1217 (La.1/14/94), 630 So.2d 773, 775. When the appellant fails to timely furnish the security required for a suspensive appeal, the right vests in the appellee to obtain dismissal of the suspensive appeal and to secure the right to execute on the judgment. Blue, Williams & Buckley v. Brian Investments, Ltd., 96-1451, p. 5 (La.App. 1st Cir.6/20/97), 706 So.2d 999, 1002, writ denied, 97-2192 (La.11/21/97), 703 So.2d 1311.
However, the suspensive appeal is not invalid merely because the appellant does not furnish security until after the delay has elapsed. Rather, the appellant's tardiness in furnishing security merely constitutes an irregularity or defect imputable to the appellant which may form a basis for the appellee to move for dismissal of the suspensive appeal under LSA-C.C.P. art. 2161. Wright, 630 So.2d at 775; Blue, Williams & Buckley, 96-1451 at p. 5, 706 So.2d at 1002.
Since the elimination of the requirement of a bond for devolutive appeals, the courts have consistently held that this defect is not jurisdictional. Thus, where the appellant has failed to file the required bond, the suspensive appeal should be converted to a devolutive appeal, as long as the appellant has met those requirements. See Schmolke v. Clary, *201 2003-2107, p. 5 (La.App. 1st Cir.9/17/04), 884 So.2d 675, 677-678, writ denied, XXXX-XXXX (La.2/18/05), 896 So.2d 41; LaHoste v. Toups, 510 So.2d 3, 4 (La.App. 1st Cir. 1987); Franco v. Franco, XXXX-XXXX, p. 13 (La.App. 4th Cir.7/28/04), 881 So.2d 131, 139; Parish of Jefferson v. Davis, 97-1200, p. 7 (La.App. 5th Cir.6/30/98), 716 So.2d 428, 432, writ denied, 98-2634 (La.12/11/98), 730 So.2d 460; Willet v. Premier Bank, National Association, 97-187 (La.App. 3rd Cir.3/24/97), 693 So.2d 2.
Notably, different courts of appeal use different language in handling a motion to dismiss a suspensive appeal, with some courts granting the motion to dismiss the suspensive appeal, while maintaining the appeal as a devolutive appeal, see Schenker v. Watkins, 521 So.2d 686, 688 (La.App. 1st Cir.1988), and Willett, 97-187, 693 So.2d at 2, and some courts denying the motion to dismiss suspensive appeal, but converting the suspensive appeal to devolutive. See Franco, XXXX-XXXX at pp. 1, 14, 881 So.2d at 132, 139.
In the supplemental record filed herein, there is an undated order of the district court, ordering that defendant's suspensive appeal noticed by the district court on June 22, 2004 is dismissed; that plaintiff is entitled to execute on the May 17, 2004 judgment of the district court for the full and just amount; and that plaintiff is entitled to attorney's fees in the amount of $250.00 pursuant to LSA-C.C.P. art. 2164 for frivolous appeal. It is unclear whether the district court through this order intended to dismiss defendant's appeal in its entirety or merely to dismiss the suspensive nature of the appeal, thereby converting it to devolutive. However, considering the district court's award of attorney's fees for frivolous appeal, it appears that the district court intended to dismiss defendant's appeal in its entirety. Therefore, the effect of this judgment on this court's jurisdiction of this appeal must first be addressed.
In Parish of Jefferson v. Davis, the Fifth Circuit Court of Appeal addressed a situation where a motion to dismiss the appeal had been filed in the appellate court, in which the appellee argued that the appellant failed to perfect a suspensive appeal because the required bond had not been timely filed. In addressing the motion, the court noted that the record contained a judgment of the trial court dismissing the appeal. The judgment of dismissal was signed almost four months after the trial court's granting of the appeal. Davis, 97-1200 at p. 5, 716 So.2d at 431.
In determining whether that trial court judgment had the effect of dismissing the appeal from the appellate court for lack of jurisdiction, the appellate court considered whether the trial court lacked jurisdiction at the time it signed the judgment of dismissal. Davis, 97-1200 at p. 5, 716 So.2d at 431. The appellate court noted that although the appellant had timely filed the motion for appeal within the time delay for a suspensive appeal, LSA-C.C.P. art. 2124 requires that both the appeal be timely filed and the security be timely posted to perfect a suspensive appeal. Nonetheless, the court noted that since the elimination of the requirement of a bond for devolutive appeals, it has been consistently held that while the suspensive appeal must be dismissed for failure to file the required bond, the appeal should be converted to a devolutive appeal as long as the appellant had met those requirements. Davis, 97-1200 at p. 7, 716 So.2d at 432.
Thus, the court concluded, since the appeal, first filed as suspensive, met the requirements for perfection of a devolutive appeal as provided by LSA-C.C.P. art. 2087, and a security bond is not required for a devolutive appeal, the appeal was *202 thereby converted to a devolutive appeal. Moreover, the court further concluded that, because the appeal met the requirements for a devolutive appeal, the jurisdiction of the trial court divested on the granting of the order of appeal. Consequently, the appellate court held that the trial court lacked the authority to later dismiss the appeal. The appellate court concluded that the trial court's judgment dismissing the appeal was invalid, and the appellate court set that judgment aside. Davis, 97-1200 at pp. 7-8, 716 So.2d at 432.
In the instant case, the judgment on the merits was signed on May 17, 2004. Defendant filed a motion for a suspensive appeal on June 16, 2004, and the motion for suspensive appeal was granted on June 22, 2004. The record contains no evidence that defendant ever posted an appeal bond. Contained in the record supplementation ordered by this court are two orders of the trial court: an April 26, 2005 order, requiring defendant to post a cash bond or obtain a commercial surety in the amount of $6,250.00 by May 11, 2005, and, as mentioned above, the undated order dismissing the suspensive appeal and awarding plaintiff attorney's fees for frivolous appeal in the amount of $250.00.
Although defendant failed to perfect a suspensive appeal, he met the requirements for a devolutive appeal. Thus, we likewise conclude that the trial court was divested of jurisdiction upon signing the June 22, 2004 order granting the appeal.[3] Consequently, the later, undated order dismissing the suspensive appeal and awarding attorney's fees for frivolous appeal is invalid and must be set aside. See Davis, 97-1201 at pp. 7-8, 716 So.2d at 432.
Thus, we conclude that the trial court's undated order did not have the effect of divesting this court of jurisdiction over this appeal. With regard to the merits of plaintiff's motion to dismiss suspensive appeal filed in this court, the motion to dismiss suspensive appeal is granted insofar as it seeks dismissal of the suspensive appeal, but the appeal is maintained as devolutive. See Schenker, 521 So.2d at 688.
Additionally, the jurisprudence holds that an appellant's tardiness in furnishing security merely constitutes an irregularity or defect which, if imputable to the appellant, may form the basis for the appellee to move for the dismissal of the suspensive appeal under LSA-C.C.P. art. 2161. Blue, Williams & Buckley, 96-1451 at p. 5, 706 So.2d at 1002. Accordingly, a motion to dismiss a suspensive appeal must be filed within three days, exclusive of holidays, of the return day or the date on which the record is lodged in the appellate court, whichever is later. LSA-C.C.P. art. 2161; Schenker, 521 So.2d at 687. In the instant case, we recognize there may be a question as to the timeliness of plaintiff's motion to dismiss suspensive appeal. However, in Schenker, the motion to dismiss suspensive appeal was not timely filed, but this court nonetheless granted the motion because, as in the instant case, no appeal bond had ever been filed. Noting that all the parties agreed that a suspensive appeal bond had not been filed and could not be obtained, this court concluded it would be a *203 vain and useless act to refuse to dismiss the suspensive appeal. Schenker, 521 So.2d at 687, 688. This same logic applies herein. Accordingly, while we grant the motion to dismiss the suspensive appeal, we deny plaintiff's request for attorney's fees pursuant to LSA-C.C.P. art. 2164. Further, we maintain the appeal as a devolutive appeal.

ASSIGNMENT OF ERROR NUMBER ONE
In his first assignment of error, defendant contends that the trial court committed legal error in permitting a termite inspection certificate to be introduced into evidence over defense counsel's objections. As stated above, one of defendant's contentions in defense to plaintiff's claims against him was that plaintiff was the first party to breach the purchase agreement, thereby relieving him of the obligation to perform. Specifically, he contended that plaintiff had not provided him with a copy of a termite inspection certificate prior to the scheduled closing date, which he contended was required under their agreement.
At trial, plaintiff testified that she had, in fact, had a termite inspection performed, and counsel for plaintiff then attempted to introduce the termite inspection certificate into evidence. Defense counsel objected to the introduction of this exhibit on the grounds of hearsay, lack of foundation and lack of authentication.
"Authentication" is a process whereby something is shown to be what it purports to be. LSA-C.E. art. 901; Newpark Resources, Inc. v. Marsh & McLennan of Louisiana, Inc., 96-0935, p. 5 (La.App. 1st Cir.2/14/97), 691 So.2d 208, 211, writ denied, 97-0691 (La.4/25/97), 692 So.2d 1094. Because authentication of evidence is a condition precedent to admissibility, an exhibit that is not authenticated does not constitute competent evidence. LSA-C.E. art. 901(A); Price v. Roy O. Martin Lumber Company, XXXX-XXXX, p. 8 (La.App. 1st Cir.4/27/05), 915 So.2d 816, 822.
In the instant case, the document in question does not qualify as a self-authenticating document pursuant to LSA-C.E. arts. 902, 904 or 905. Thus, plaintiff was required to present evidence sufficient to support a finding that the certificate was what she claimed. See LSA-C.E. art. 901(A). Louisiana Code of Evidence article 901(B) includes a non-exclusive list of methods that may be utilized to authenticate evidence, which includes testimony of a witness with knowledge that a matter is what it is claimed to be. LSA-C.E. art. 901(B)(1).
The document in question is a "Wood Destroying Insect Report" form that appears to have been completed and signed by an individual named "Sidney Marchand," as the inspector for Willie's Pest Control, Inc. The document lists the date of inspection as February 5, 2003, and lists the property owner or seller as "Jennifer Jerome." The document further indicates that no visible evidence of wood-destroying insects was observed.
The only evidence offered by plaintiff to authenticate the termite inspection certificate was the testimony of plaintiff herself. Plaintiff testified that in anticipation of the real estate closing, she had a termite inspection performed. She further identified the termite inspection certificate issued by Willie's Pest Control. However, when asked if her signature was on the document, plaintiff responded that, while her name appeared on the document, she was not required to sign it.[4] Plaintiff further *204 testified that the document evidenced the agreement she reached with the termite company and that she had paid an inspection fee of $25.00 for those services. At that point, the trial court admitted the certificate into evidence over defendant's objections.
Accordingly, the issue before us is whether plaintiff's testimony alone was sufficient to establish that the termite inspection certificate was what it purported to be. In Newpark Resources, Inc., the plaintiff challenged the trial court's actions in admitting two letters offered by defendant into evidence. In concluding that the trial court had erred in admitting the letters into evidence, this court noted that neither the author nor the recipient of the letters was called to testify with regard to the authenticity of the letters. Newpark Resources, Inc., 96-0935 at p. 6, 691 So.2d at 211. Thus, the court seemed to suggest that the recipient of a document could establish its authenticity.[5]
However, in First National Bank of Jefferson Parish v. Keyworth, 95-809, p. 10 (La.App. 5th Cir.2/14/96), 670 So.2d 1288, 1293, the defendant argued that the trial court had erred in excluding from evidence a letter sent to him by counsel for the plaintiff. In concluding that the trial court had not erred in excluding the letter, the court noted that the defendant had not offered any witnesses to authenticate the excluded exhibit. First National Bank of Jefferson Parish, 95-809 at p. 10, 670 So.2d at 1293. Thus, the letter sent to the defendant himself by counsel for the plaintiff was deemed not properly authenticated. First National Bank of Jefferson Parish, 95-809 at pp. 4-10, 670 So.2d at 1290-1293.
In the instant case, while plaintiff testified that the certificate evidenced her agreement with the termite company, she did not testify as to who completed or signed the form or who had given the form to her. Additionally, she was not able to verify the handwriting on the document based on familiarity. See LSA-C.E. art. 901(A)(2).
While it appears that the termite inspection certificate was not properly authenticated in the instant case, we nonetheless conclude that the error in admitting it into evidence was nonetheless harmless. Although the letter may have been inadmissible because of lack of authentication, the admission of the certificate into evidence was harmless error, given plaintiff's uncontradicted testimony that a termite inspection had been performed and that the termite certificate was available for defendant at the scheduled closing, which he did not attend. See Newpark Resources, Inc., 96-0935 at p. 6, 691 So.2d at 211.
Similarly, we conclude that even if the document was offered for an improper hearsay purpose, such as establishing that the house was termite-free, any such error was harmless.[6] The admission of hearsay testimony is also subject to the *205 harmless error analysis. Brooks v. Southern University and Agricultural and Mechanical College, XXXX-XXXX, p. 11 (La.App. 4th Cir.7/14/04), 877 So.2d 1194, 1203, writ denied, 2004-2246 (La.11/19/04), 888 So.2d 208. The admission of a hearsay statement that is merely cumulative or corroborative of other evidence is generally held to be harmless error. Brooks, XXXX-XXXX at p. 11, 877 So.2d at 1203. As stated above, the admission of the certificate into evidence was harmless error, given plaintiff's uncontradicted testimony that a termite inspection had been performed and that the termite certificate was available for defendant at the scheduled closing, which he did not attend. Accordingly we find no merit to this assignment of error.

ASSIGNMENT OF ERROR NUMBER TWO
In his second assignment of error, defendant contends that the trial court committed legal error in ruling in favor of plaintiff and in failing to render judgment in favor of defendant on his reconventional demand. In support of his position, defendant contends that plaintiff breached the contract at issue, i.e., the purchase agreement, prior to defendant's obligation to perform. Thus, defendant contends, he was relieved of any future obligations under the contract.
Specifically, defendant contends that plaintiff breached her obligation to provide him with a termite inspection certificate prior to the scheduled act of sale and also breached her obligation to provide him with a property condition disclosure statement within twenty-four hours of signing of the purchase agreement. Accordingly, defendant contends that the trial court committed legal error in failing to find that these breaches by plaintiff relieved him of the obligation to attend the act of sale and execute the necessary sale documents. He further contends that the trial court committed legal error in failing to conclude that plaintiff's breach entitled him to return of his deposit, attorney's fees and all costs, as sought in his reconventional demand.
Contracts have the effect of law between the parties and may be dissolved only through the consent of the parties or on grounds provided by law. Moreover, contracts must be performed in good faith. LSA-C.C. art. 1983; Levin v. May, 2003-2205, p. 8 (La.App. 1st Cir.9/17/04), 887 So.2d 497, 502. Accordingly, we must look to the terms of the contract to determine whether the trial court erred in finding that plaintiff had not breached it.
With regard to the termite inspection certificate agreement, the purchase agreement provides, in pertinent part, as follows:
Seller shall provide at act of sale a wood destroying insect report issued by a pest control company licensed by the state of Louisiana within 30 days prior to the act of sale indicating no visible evidence of active infestation. (Emphasis added).
This provision clearly provides that the termite inspection report or certificate was to be provided by the seller "at act of sale." Plaintiff testified that she had a termite inspection performed which did not disclose any termite damage and that the termite inspection certificate was available for defendant at the scheduled closing, as required by the purchase agreement. This testimony was unrefuted. Additionally, plaintiff testified that defendant had never requested that she provide him with a copy of the certificate prior to the closing. Accordingly, this argument lacks merit.
Regarding plaintiff's obligation to provide defendant with a property condition disclosure statement, the contract provides: *206 "Seller shall provide Purchaser with a Property Condition Disclosure Statement within 24 hours after signing this agreement."[7] As stated above, at trial plaintiff acknowledged that she could not answer truthfully whether or not she had provided defendant with this document. Nonetheless, the trial court concluded that while plaintiff may not have "dot[ted] every `I' and cross[ed] every `T'," this was not enough to warrant cancellation of the purchase agreement.[8]
With regard to dissolution, LSA-C.C. art. 2014 provides that "[a] contract may not be dissolved when the obligor has rendered a substantial part of the performance and the part not rendered does not substantially impair the interest of the obligee." According to the official comments, this article "prevents a party from receding from a contract on a mere excuse." LSA-C.C. art. 2014, Revision Comment (b) (1984); Levin, 2003-2205 at p. 9, 887 So.2d at 502.
The record clearly shows that plaintiff substantially performed her obligations under the contract and stood ready and waiting to transfer the property at the scheduled closing date. Thus, the issue before the trial court was whether plaintiff's apparent failure to fulfill the provision of the contract requiring her to provide defendant with a property disclosure statement within twenty-four hours of the signing of the purchase agreement substantially impaired defendant's interest. The trial court obviously concluded that it did not.
The record demonstrates that on February 11, 2003, twelve days after the purchase agreement was confected, defendant had a home inspection performed on the property subject to the purchase agreement. As stated above, this inspection revealed only minor problems with the home, which, as noted by the trial court, were readily apparent upon mere inspection of the premises. Moreover, defendant acknowledged that he had never requested that plaintiff repair any of the problems noted in the inspection.
Additionally, plaintiff testified that when defendant called her four days before the scheduled closing, defendant related to her that he would not honor the purchase agreement because of personal problems he was having with his girlfriend. No mention or complaint was made at that time of lack of a property condition disclosure *207 statement. While defendant attempted to deny that his personal problems were the reason he failed to proceed with the purchase of the house, the trial court accepted the testimony of plaintiff as more credible. The factfinder's reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review where conflict exists in the testimony. Stobart v. State, Department of Transportation and Development, 617 So.2d 880, 882 (La.1993). Thus, the record supports the findings that defendant was attempting to recede from the contract on a mere excuse, after having decided that he simply no longer desired to purchase plaintiff's home, conduct which is prohibited by LSA-C.C. art. 2014.
Accordingly, the trial court's conclusions that plaintiff's failure to "dot every `I' and cross every `T"' did not constitute default of the agreement by her and was insufficient to warrant cancellation of the purchase agreement are well supported by the record. Moreover, the trial court's conclusion that defendant had wrongfully breached the purchase agreement in failing to go through with the act of sale likewise is amply supported by the record. This assignment of error also lacks merit.

CONCLUSION
For the above and foregoing reasons, we maintain jurisdiction over this appeal. The undated judgment of the trial court (reflecting a filing stamp of May 18, 2005 which dismissed the instant appeal and awarded attorney's fees for frivolous appeal) as shown in the supplement to this record, is vacated. Plaintiff's motion to dismiss suspensive appeal filed in this court is granted, but the appeal is maintained as a devolutive appeal. The May 17, 2004 judgment on appeal is affirmed. Plaintiff's request for attorney's fees filed in this court, is also denied. All costs are assessed against defendant/appellant, David Graves.
TRIAL COURT'S ORDER DISMISSING APPEAL VACATED; SUSPENSIVE APPEAL DISMISSED, BUT CONVERTED TO DEVOLUTIVE APPEAL; REQUEST FOR ATTORNEY'S FEES DENIED; JUDGMENT OF MAY 17, 2004 AFFIRMED.
McCLENDON, J., concurs and assigns reasons.
I believe that the testimony of the witness with personal knowledge, that is the homeowner for whom the report was prepared, was sufficient to authenticate the document. Thus, I respectfully concur in the result.
NOTES
[1] These problems included two toilets being loose at the floor level; a bathtub drain stop that did not work; a ceiling light, carport light and left front porch light that did not work; a cracked receptacle cover; a settlement crack above the front door at the sheetrock seam; a cracked window glazing; attic stairs that did not close properly; a "nail pop" on a shingle at the back edge of the roof; a missing shingle tab at the back edge of the roof; some algae growth on the front of the roof; and gutters that needed to be cleaned in the front of the home and at the carport.
[2] Clement ultimately sold the house in August of 2003. Accordingly, as of the time of trial, she was no longer seeking specific performance.
[3] A trial court retains jurisdiction over certain matters, such as testing the solvency of the surety on the appeal bond and considering objections to the form, substance and sufficiency of the appeal bond. LSA-C.C.P. art. 2088(5). However, where the defects of the alleged bond are so glaring and so numerous that it forms no bond at all, the court of appeal may properly dismiss the suspensive appeal. Sayyah v. Doumani, 521 So.2d 715, 716 (La.App. 1st Cir.1988).
[4] Although the document at issue contains a signature line for the owner of the property inspected to indicate receipt of a copy of the form, that signature line on the document at issue is blank.
[5] Presumably, plaintiff in the instant case was the recipient of the termite inspection certificate, although she did not specifically testify that the document was delivered to her.
[6] Hearsay is "a statement other than one made by the declarant while testifying at the present trial or hearing, offered in evidence to prove the truth of the matter asserted." LSA-C.E. art. 801(C). We note that the document at issue was offered at least in part for the non-hearsay purpose of establishing that the inspection had in fact been performed and that the certificate had been prepared prior to the scheduled closing in accordance with plaintiff's obligations under the purchase agreement.
[7] The agreement further provides that the purchaser shall return a signed acknowledgement of receipt of the Property Condition Disclosure Statement to the listing broker within 24 hours. Notably, this purchase agreement was confected without the aid of a listing broker.
[8] By Acts 2003, No. 308, the Residential Property Disclosure Act was enacted, effective June 13, 2003. LSA-R.S. 9:3196 et seq. The Act requires the seller of residential real property to complete a property disclosure document. LSA-R.S. 9:3198(A)(1). A "property disclosure document" is defined as a document or a form that discloses, at a minimum, known defects in the residential property. LSA-R.S. 9:3196(2). By this legislation, the seller is now required to deliver the completed and signed property disclosure document to the purchaser no later than the time the purchaser makes an offer to purchase, exchange or option or exercises the option to purchase pursuant to a lease with such option. LSA-R.S. 9:3198(B)(2). If the property disclosure document is delivered to the purchaser after the purchaser makes an offer, the purchaser has the right to terminate any resulting real estate contract or withdraw the offer no later than seventy-two hours, excluding holidays and weekends, after receipt of the property disclosure document. LSA-R.S. 9:3198(B)(3)(a). Louisiana Revised Statute 9:3197(A) provides that this Chapter shall apply to the transfer of any interest in residential real property on and after July 1, 2004. Because the purchase agreement at issue was signed on January 29, 2003, these provisions do not apply herein.