# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT


## 08-166


**MARTHA ELIZABETH SASSONE**

**VERSUS**

**HARTEL ENTERPRISES, L.L.C., ET AL.**


\*\*\*\*\*\*\*\*\*\*


APPEAL FROM THE
TWENTY-FOURTH JUDICIAL DISTRICT COURT
PARISH OF JEFFERSON, NO. 638,779 Div. P
HONORABLE ROBERT L. LOBRANO, DISTRICT JUDGE, AD HOC


\*\*\*\*\*\*\*\*\*\*


## ULYSSES GENE THIBODEAUX
## CHIEF JUDGE


\*\*\*\*\*\*\*\*\*\*


Court composed of Ulysses Gene Thibodeaux, Chief Judge, Jimmie C. Peters, and James T. Genovese, Judges.


                                                            **AFFIRMED.**

**Thomas G. Wilkinson**
**Philip A. Gattuso**
**P. O. Box 1190**
**Gretna, LA 70054**
**Telephone:  (504) 368-4141**
**COUNSEL FOR:**
       **Defendants/Appellees - Louis Savoye, Department of Code Enforcement and the Parish of Jefferson**

**Thomas W. Milliner**
**Brian J. Burke**
**3636 S. I-10 Service Road West - Suite 206**
**Metairie, LA 70001**
**Telephone:  (504) 835-9951**
**COUNSEL FOR:**
       **Plaintiff/Appellant - Martha Elizabeth Sassone**

**Coleman D. Ridley, Jr.**
**Joshua J. Lewis**
**Jones, Walker, Waechter, Poitevent, Carrère & Denègre, L.L.P.**
**201 St. Charles Avenue**
**New Orleans, LA 70170**
**Telephone:  (504) 582-8000**
**COUNSEL FOR:**
**Defendant/Appellee - Hartel Enterprises, L.L.C.**

**THIBODEAUX, Chief Judge.**

This case involves a zoning dispute between two commercial property owners. The plaintiff-appellant, Martha E. Sassone, filed a suit for judicial review against the defendants-appellees, Hartel Enterprises, L.L.C., and Louis Savoye, the Jefferson Parish Director of the Department of Inspection and Code Enforcement (DICE). Judicial review was sought after the Board of Zoning Adjustments (BZA) determined that Hartel's planned fitness facility was a "permitted" use under the zoning code and granted Hartel a parking variance for fewer spaces than the code required. Sassone appealed the BZA decision to the district court in Jefferson Parish, and the district court affirmed the BZA decision. For the following reasons, we affirm.

I.

## ISSUES

We must decide:

(1)    whether the trial court erred in affirming the BZA decision that the planned fitness facility is a "permitted" use under the zoning code; and

(2)    whether the trial court erred in affirming the parking variance granted by the BZA.

II.

## FACTS AND PROCEDURAL HISTORY

Sassone is the owner of the Salon Selonj at 105-107 Aris Street in Metairie, Louisiana, which is located in the immediate vicinity of 601 Frisco Avenue in Jefferson Parish. Hartel submitted plans to convert the Frisco Avenue property from its current use as Gulf Optical, employing over twenty (20) people during normal business hours, to a small franchise fitness studio called Snap Fitness, which

will be run by one employee at a time and will be open twenty-four hours a day, seven days a week. The BZA determined that a fitness studio was a permitted use in the commercially zoned district at issue, and that the 4,800 square foot facility planned would require twenty-four (24) parking spaces. The plan indicated only fourteen (14) parking spaces. Hartel requested a variance to ten (10) spaces, which was granted. Sassone appealed the BZA decision and now appeals the district court's affirmance of that decision.

III.

## LAW AND DISCUSSION

### Standard of Review

A prima facie presumption of validity attaches to zoning board actions, and a reviewing court cannot substitute its own judgment for that of the board. The reviewing court cannot interfere absent a showing by the appellant that the board was arbitrary and capricious or that the board abused its discretion. On appeal, the person who opposes a zoning board's decision bears the burden of proof that the decision was arbitrary, capricious, and unreasonable. *Parish of Jefferson v. Davis,* 97-1200, 97-1201 (La.App. 5 Cir. 6/30/98), 716 So.2d 428, *writ denied,* 98-2634 (La. 12/11/98), 730 So.2d 460; *Cerminaro v. Jefferson Parish Zoning Appeals Bd.*, 02-1041 (La.App. 5 Cir. 2/11/03), 838 So.2d 193.

### Permitted Use

The area containing the commercial property of the parties is zoned C-1, Neighborhood Commercial District. The building, lot, parking and other requirements of all zoning districts are provided for in Chapter 40 of the Comprehensive Zoning Ordinance (CZO). The section pertaining to the C-1

Neighborhood Commercial District is located in Article XIX of Chapter 40 of the

CZO and stated, prior to its recodification on December 12, 2007, in pertinent part

as follows (emphasis ours):

**Article XIX.  Neighborhood Commercial District C-1**

**Sec. 40-321.  Description.**

This district is composed of certain lands and structures used primarily to provide for the retailing of *goods and* the furnishing of selected *services* . . . .

**Sec. 40-322.  Permitted uses.**

In C-1 districts only the following uses of property shall be permitted:

(1) Any existing stand-alone residential use . . . .

(2) A residential dwelling shall be permitted only in the main structure containing non-residential uses permitted . . . .

(3) Apartment hotel.

(4) Bakeries, retail . . . .

(5) Banks, including drive-in banks.

(6) Barber shops and beauty shops.

(7) Board and care home . . . .

(8) Catering and delicatessen business.

(9) Cemeteries . . . .

(10) Clinic, medical, dental, chiropractic, or an establishment operated by a massage therapist . . . .

(11) Clubs and lodges.

(12) Copying service.

(13) Custom dressmaking, millinery, tailoring or similar retail trades employing not more than five (5) persons . . ..

3

(14) Dry cleaning and laundries . . . said business not to employ more than five (5) persons on the premises.

(15) Elderly housing and assisted living facility . . . .

(16) Filling stations.

(17) Funeral homes, mortuaries, and crematories.

(18) Government structures and land.

(19) Parking garages, including parking lots.

*(20) General retail stores and establishments having a gross floor area of not more than twenty-five thousand (25,000) square feet, or twelve (12) percent of the total area of the commercial shopping center in which the retail store or establishment is located, whichever is larger.*

(21) Convalescent and nursing homes.

(22) Institutions, but not to include chemical dependency units and penal, correction or mental institutions.

(23) Laundromats.

(24) Libraries, museums, community centers . . . .

(25) Locker plants, renting lockers for storage of food.

(26) Nurseries and flower gardening.

(27) Nursery schools, pre-schools, and kindergartens . . . .

(28) Offices . . . not exceeding thirty thousand (30,000) square feet in one (1) building . . . .

(29) Public utility structures . . . .

(30) Publishing without printing.

(31) Recreational uses.

(32) Schools.

(33) Shops, light repair, employing not more than five (5) persons on the premises.

(34) Stores, retail having a gross floor area of not more than twenty-five thousand (25,000) square feet . . . .

(35) Taxi stands and stands for public transit vehicles.

(36) Accessory buildings and uses customarily incidental to the above uses, . . . .

(37) Animal hospitals and veterinary clinics . . . .

(38) Commercial transmission towers, radio towers . . . .

Hartel and Mr. Savoye, Director of DICE, argue that, although not specifically listed in the C-1 classification, the fitness studio is permitted under subsection 20 listed above, which allows "general retail stores and establishments." Sassone argues that the facility is not permitted because it is not specifically listed, and further argues that the retail establishment of subsection 20 applies only to the sale of goods, not to the sale of services, which is the main purpose of the intended health facility. We disagree. One has but to examine the first sentence of Section 40-321's description as well as the entire list of uses under Section 40-322 above to determine that a commercial district zoned as C-1 includes businesses that provide services, not just businesses that sell goods. In fact most of the above-listed uses are for service establishments.

Moreover, the record reveals that most of the other eleven businesses in this commercial strip center are service establishments: a barber shop, a remediation service, a Karate studio, a mail and parcel service, an alterations business, a washateria, a dry cleaner, and an attorney's office, almost all of which are not specifically listed uses under Section 40-322 above. Mr. Charlet, the regulatory manager for DICE, acting as assistant Director, testified in his deposition as follows: "In the world of zoning enforcement there are more uses out there than are listed. And the obligation of the director is to characterize [sic] those uses not listed into the ones most nearly resembled in the zoning ordinance. . . . " Accordingly, the trial

5

court did not err in affirming the BZA's determination that Snap Fitness constitutes a "permitted" use in a C-1 district.

Hartel and Mr. Savoye argue also that, under a "cumulative interpretation," because health clubs are permitted in a GO-2, General Office, District, which is a *more restrictive* district, the health club should be permitted in a C-1 district which is *less restrictive*. We do not reach this argument because we do not need to examine Snap Fitness under GO-2 or a cumulative interpretation when it clearly constitutes a permitted used under C-1 at Section 40-322, subsection 20, as a general retail establishment. The BZA did not mention subsection 20 or district GO-2 or cumulative interpretation in its judgment, but stated simply: "Please note: Snap Fitness is a 'permitted' use." The district trial judge reviewing the BZA decision indicated in his Reasons for Judgment that he was "satisfied that the CZO contemplates the Director using any number of factors, including 'cumulative interpretation' to reach his decision" and that the trial judge found no error, "whatever" methods were used by the BZA. We find this too broad and sweeping a statement on the part of the district court, but the result is correct, and we find no reversible error in the trial court's affirmance of the BZA.

**Parking Variance**

The BZA determined that the 4,800 square foot building being converted for Snap Fitness would require twenty-four (24) parking spaces and then granted a variance to Hartel, reducing the required number of spaces to fourteen (14). Sassone asserts that the BZA lacked jurisdiction to grant the off-street parking variance to Hartel because the BZA cannot grant a variance for a use not permitted in a C-1 district. This argument has no merit because, as indicated above, Snap Fitness does constitute a permitted use in a C-1 district. The sections conferring authority on the

6

BZA for granting and calculating off-street parking variances and waivers provide in pertinent part as follows (emphasis ours):

> **<u>Article XXXV. Off-street Parking and Loading Regulations</u>**
>
> **Sec. 40-661. General requirements**.
>
> (a) Location of required parking spaces except as may otherwise be provided in this section, shall be located as provided below.
>
> (1) Off-street parking facilities for:
>
> . . . .
>
> (3) Non-residential uses in non-residential districts. All other uses except one-family, two-family, three-family, four-family dwellings, condominiums, and townhouses may have off-site parking facilities in non-residential districts. Required parking spaces for GO-2 General Office District, GO-1 General Office District, H-1 Medical Service District, H-2 Medical Service District, BC-1 Business Core District, *C-1 Neighborhood Commercial District*. . . . shall be located on the same lot as the principal use or on land within three hundred (300) feet of the lot line of the principal use and not separated by a street, utility right-of-way or public right-of-way. . . .
>
> **<u>Sec. 40-662. Off-street parking requirements.</u>**
>
> Off-street parking spaces shall be provided on any lot for which any of the following listed uses are hereafter established . . . .
>
> . . . .
>
> | (18) General Business, Commercial or Personal Service Establishments, catering to retail trade, including "Supermarkets" | One (1) space for each two hundred (200) square feet of gross floor area |
> |---|---|

<u>Sec. 40-792. Powers of the board</u>.

The board of zoning adjustments shall have all the powers and duties prescribed by this ordinance, which are more particularly specified as follows:

. . . .

(2) Exceptions. To grant an exception from the provisions of the Comprehensive Zoning Ordinance in the following instances:

. . . .

(3) Variances. In accordance with standards, hereafter prescribed, to grant variances from the provisions of the Comprehensive Zoning Ordinance in the following instances:

. . . .

b. Waive or reduce the parking and loading requirements in the R-3 Multiple-Family Residential, *and all other less restrictive districts*, however, appeals for parking requirement reductions where the required parking exceeds ten (10) spaces shall be limited to a maximum of ten (10) spaces or ten (10) percent of the required parking, whichever is greater, and shall be considered only if all parking spaces are standard size. The provisions of this paragraph are subject to section 40-481.

Mr. Charlet testified that the proper formula for calculating the number of required parking spaces is set forth above in the Use Table at Section 40-662, subsection (18), since Snap Fitness, for parking purposes, fits the use of "General Business, Commercial or Personal Service Establishments, catering to retail trade." The floor area of Snap Fitness after conversion will be 4,800 square feet, which is divided by 200 to arrive at a required number of parking spaces, which is a total of twenty-four (24) spaces in this case. Pursuant to Section 40-792 above, the BZA can

grant a variance and waive a maximum of ten (10) spaces, which was done in this case, resulting in a reduction of twenty-four (24) parking spaces to fourteen (14) parking spaces. The reduction for Hartel constitutes a final requirement that Hartel provide parking at fifty-eight percent (58%) of the original required spaces. In-depth parking studies were done. The record reveals that the other tenants in this commercial area were granted variances and have fewer than fifty-percent (50%) of the required spaces. More specifically, where an overall 207 parking spaces are required, only 74 parking spaces exist.

The record further reveals that the current tenant in the Frisco Avenue property, Gulf Optical, has over twenty (20) employees and only nine (9) parking spaces. Pursuant to the renovation planned by Hartel, a building and a loading dock in the rear of the property will be demolished, and a total of fourteen (14) parking spaces will be provided with only one (1) employee operating Snap Fitness. That results in five (5) more spaces for nineteen (19) fewer employees. Because the facility will be open twenty-four hours a day every day, there will be no closing hour jams as people will not have to hurry to get their work-out in before closing. Studies at other Snap Fitness franchises in the parish indicate that Snap Fitness has an average of about six clients per hour. Hence, the conversion in this case will greatly improve the parking scenario at the subject property.

At the BZA hearing, Board member Carey Hammett stated that she had visited a Snap Fitness facility in Kenner at 4:30 p.m. and found a beautiful facility, not crowded, and a first class operation that should "appreciate" property values in the subject area. The BZA judgment in this case recited many of the above considerations and advantages and stated that Snap Fitness would be an improvement

9

to the site, and would increase property values and enhance the prosperity and general welfare of the neighborhood and community.

Sassone further argues that the square footage of 4,800 feet was miscalculated, and that the actual square footage is 4,980, requiring twenty-five (25) parking spaces, instead of twenty-four (24), as found by the BZA. Hence, a waiver of ten spaces could not reduce the number below fifteen (15) spaces, resulting in a final shortage of one parking space. Through the deposition testimony of Mr. Charlet, counsel for Sassone demonstrated how he arrived at 4,980 square feet using measurements from one of the plans submitted. However, Mr. Charlet ultimately testified that it was his understanding that a building and loading dock behind the current facility would be demolished, which he indicated by placing two large X's on the drawing attached to his deposition, and that another plan would be submitted that would cut the square footage down to 4,800 square feet. Mr. Charlet further testified that it is not unusual, and that it happens occasionally, that a plan will be altered to reduce square footage of a building, and then be resubmitted, in order to comply with parking requirements. Hence, the evidence reveals that the BZA decisions in this matter were not arbitrary, capricious, or unreasonable.

IV.

**CONCLUSION**

Based upon the foregoing, we find no abuse of discretion on the part of the BZA in finding that Snap Fitness constitutes a permitted use in this C-1 district and in granting the variance which reduces the required parking spaces at the subject property to fourteen (14) spaces; nor do we find error on the part of the district court in affirming the decisions of the BZA.

All costs shall be assessed against the appellant, Martha Elizabeth Sassone.

**AFFIRMED.**[1]

---

[1]By order of the Supreme Court, this appeal was transferred to this court from the Louisiana Fifth Circuit Court of Appeal due to the fifth circuit judges' *en banc* recusal of themselves from this case.