40 So.3d 207 (2010)
Glen L. FREEMAN, Calvin W. Freeman, Bob Carver, Diana Carver, Earl Jones, Lillian Jones, Elsie M. Vega, Michael Borey, Aurora Valdez, Paula De La Cruz, Perry Doty, Vivian Doty, Ramiro J. Quiroz, Wilson Doty, Mike Doty, Dennis Bauer, Yvonne Bauer, Thomas A. Reis, Donna J. Reis, and Nicholas Guillot
v.
KENNER BOARD OF ZONING ADJUSTMENTS and Angel Herrera.
No. 09-CA-1060.
Court of Appeal of Louisiana, Fifth Circuit.
April 27, 2010.
*208 Kurt C. Garcia, Attorney at Law, Kenner, LA, for Plaintiff/Appellant.
Leigh H. Roussel, Attorney at Law, Kenner, LA, for Defendant/Appellee.
Panel composed of Judges WALTER J. ROTHSCHILD, FREDERICKA HOMBERG WICKER, and JUDE G. GRAVOIS.
FREDERICKA HOMBERG WICKER, Judge.
This is a zoning dispute. The case arises from the zoning board's decision to grant a property owner's request for a landscaping ordinance variance. The *209 property owner's neighbors, the plaintiffs, appealed the decision to the district court. The district court affirmed the board's decision. The plaintiffs have now appealed. The issues presented by the appeal are the following: (1) Did the trial court err by affirming the variance? (2) Did the trial court err by refusing to return the $500 bond the plaintiffs posted in order to appeal the decision of the zoning board? For the reasons that follow, we affirm.

Procedural Background
Numerous plaintiffs[1] filed suit against Angel Herrera[2] and the Kenner Board of Zoning Adjustments (the board). The plaintiffs appealed the board's May 6, 2009 decision granting Mr. Herrera a variance from the required landscaping buffer. The matter was submitted on the record of the board's proceedings. Those proceedings indicate the following:
Mr. Herrera's property is located on Georgia Street in Kenner and zoned C-1, neighborhood commercial. At one time, the property was residential property. However, this neighborhood is in transition and the property is now zoned C-1. Mr. Herrera stated that he was converting the residence on the property to a minimart. Mr. Herrera said that he had owned the property for three years but never resided there when it was residential property. He purchased the property strictly for investment. The house has been empty for a few years.
In order to convert the former residential property to its now permitted use as a business, Mr. Herrera must provide more rear parking spaces under the Kenner Comprehensive Zoning Ordinance's (CZO's) parking requirements. He would not, however, have enough space for parking should he have to also comply with the landscaping ordinance. The landscaping ordinance, Title XX, Section 20.09.01(d)(3)(iv)(A), requires a 5 foot (5') landscaping buffer zone for the side and rear property lines abutting a residential zone or structure. The driveway would not allow room for the landscaping buffer.
Mr. Herrara's permit to remodel or convert his house to a mini mart was not approved because of noncompliance with the landscaping ordinance. Mr. Herrara appealed to the board seeking a variance from the landscaping ordinance. He asked to eliminate the portion of the landscape buffer that would run to the edge of the house along the driveway side of the property so as to meet the parking ordinance requirements.
On May 6, 2009, the board held a public hearing. No one in the audience spoke either in favor of or against the requested variance. The board approved Mr. Herrera's request for a variance provided that he extend landscaping of the rear lot line across the entire distance of the lot line. The board granted the variance "due to the conflicting requirements of the Comprehensive Zoning Ordinance regarding parking and landscaping." The board reasoned that "[t]he purpose of this compromise is to help satisfy the intent of the Landscaping Ordinance to provide additional landscaping in commercial districts."
*210 One board member explained that occasionally the requirements of one part of the CZO conflicts with other parts. A variance, however, is not based on the whim of the members but on some hardship that can be shown or proven by the applicant. In this case, the members were looking for some type of compromise to meet the intent of the landscape ordinance and also meet the other requirements of the CZO. Reaching such a compromise would serve the purpose not only of enabling Mr. Herrera's development, but also protecting the rights of the other property owners in this transitioning neighborhood.
This member stated that in order to meet the intent of the ordinance to provide additional landscaping, he proposed the possibility of having additional landscaping in the rear to replace what was missing on the side. Mr. Herrera agreed that he had no problem with having the entire rear area landscaped.
The member proposed a motion that they grant the variance and that Mr. Herrera extend the rear lot line landscaping across the entire distance of the rear lot line. The motion passed. Another member noted that the additional landscaping in the rear replaced approximately 40% of the amount that would be removed with the granting of the variance.
The trial judge affirmed the board's decision. The court found that the plaintiffs failed to meet their burden of showing that the board's decision was arbitrary, capricious, or unreasonable. The court concluded that Mr. Herrera proved "unusual and practical difficulty or particular hardship" as required by CZO Section 21.04(c)(2) for entitlement to a variance. The court found that based on the configuration of the property, the pre-existing building, and the commercial zoning, it would constitute a hardship to Mr. Herrera to use the property as permitted if he were required to adhere to an absolutely strict following of the landscaping rules. The court further found that the decision requiring Mr. Herrera to maintain a landscape buffer across the rear of the property rather than on the side, that abuts the next more dense property, was not an arbitrary conclusion of the board but was based on the particular facts and hardship circumstances of the case, particularly since the parking requirements would be strictly adhered to. In conclusion, the court stated that the facts presented showed that Mr. Herrera could not comply with strict application of both the landscaping and parking ordinances. The court concluded that the board's decision was in compliance with the stated objectives of the zoning ordinance to render "substantial justice," citing La. R.S. 33:4727(C)(3).

Zone District C-1 and the Comprehensive Landscaping Ordinance
Article XII, Section 12.01(a) of the CZO states that the purpose of the C-1 districtneighborhood commercial"is to provide retail shopping and personal service uses ... to serve the needs of a relatively small area, primarily nearby low density residential neighborhoods." The CZO regulates the district so as "to encourage compatibility with the residential surroundings." "It is not the intent of this district to provide for any residential uses." Id.
Article XX, Section 20.09.01 provides landscaping requirements. Its intent and purpose "is to protect and enhance the community's environmental, economic and aesthetic resources consistent with the goals of the city in its land use and development." Section 20.09.01(a). The regulations seek to "promote the public health, safety and general welfare of existing and future residents, and contribute to the quality of life by establishing minimum *211 standards for the installation and continued maintenance of landscaping within the city" for the purpose of water conservation, aesthetics, and environmental quality. Sections 20.09.01(a)(1), (2), and (3).
CZO Article XX, Section 20.09.01(d)(3)(iv)(A) requires a buffer zone in addition to other landscape requirements for certain zoned districts, including C-1, neighborhood commercial. It requires that "for the side and rear property lines abutting a residential zone or structure, one (1) tree is required for every ten (10) feet (or portion thereof) of common property line." It also requires that "[e]ach tree must be spaced evenly along the common property line and must be planted in a strip of not less than five (5) feet wide." Furthermore, "[e]ach planting area must be landscaped with groundcover or other landscape material excluding paving in addition to the required tree."

The Board's Authority
The plaintiffs argue that the board amended or changed the CZO or landscaping ordinance. Thus, they argue that the board did not have the authority to grant a variance. We disagree that the board amended or changed the CZO. For the reasons that follow, we find that the board had the authority to grant a variance in this case.
When "passing upon appeals, where there are practical difficulties or unnecessary hardships in the way of carrying out the strict letter of the ordinance," the board has statutory authority "to vary or modify the application of any of the regulations or provisions of the ordinance relating to the use, construction, or alteration of buildings or structures or the use of land so that the spirit of the ordinance shall be observed, public safety and welfare secured, and substantial justice done." La. R.S. 33:4727(C)(3)(c).
Contemplating that practical difficulties or unnecessary hardships could arise in carrying out the strict letter of the landscaping ordinance, the CZO provides for "[a]lternative compliance" of Article XX Section 20.09.01(d)(3)(iv)(A). Section 20.09.01(f).
The CZO provides that the landscape standards contained in the section at issue here "are intended to encourage development which is economically viable and environmentally sensitive." Article XX, Section 20.09.01(f)(1). Those "standards are not intended to be so specific as to inhibit creative development." Id. The CZO recognizes that "[p]roject conditions associated with individual sites may justify approval of alternative methods of compliance with the landscape standards." Id. "Conditions may arise where normal compliance is impractical or impossible, or a maximum achievement of the city's objectives can only be obtained through alternative compliance." Id.
Requests for alternative compliance will be accepted when one (1) or more of certain enumerated conditions are met. Article XX, Section 20.09.01(f)(2). One of these conditions is that "[s]patial limitations... may justify alternative compliance." Section 20.09.01(f)(2)(iii). However, "[t]he director of the department of inspection and code enforcement, in consultation with the director of the planning department, may not reduce the requirements of section 20.09.01 by more than fifty (50) percent." Section 20.09.01(f)(3). Additionally, "[i]f compliance with this chapter of the Comprehensive Landscape Ordinance is not possible, and there is no feasible alternative for compliance, the director of the planning department in consultation with the director of the department inspection and code enforcement may grant minor variations from the code." Section 20.09.01(f)(5). "If larger modifications *212 to the code are required, the applicant must apply to the board of zoning adjustments for a waiver of this chapter of the Comprehensive Landscape Ordinance." Id.
Finally, consistent with the statutory authority to grant a variance, Article XXI, Section 21.04 of the CZO provides that the board has the authority to permit a variance "whenever a property owner can show that a strict application of the terms of the ordinances, relating to the use, construction, or alteration of buildings or other structures, or the use of land, will impose upon him unusual and practical difficulties or particular hardship, but only when the board is satisfied that the granting of such variance will not merely serve as a convenience to the applicant, but will alleviate some demonstrable and unusual hardship or difficulty so great as to warrant a deviation from the comprehensive plan as established by this ordinance, and at the same time, the surrounding property will be properly protected." Section 21.04(c)(2).

Standard of Review/Hardship
A prima facie presumption of validity attaches to zoning board actions. Parish of Jefferson v. Davis, 97-1200, p. 8 (La.App. 5 Cir. 6/30/98), 716 So.2d 428, 433, writ denied, 98-2634 (La.12/11/98), 730 So.2d 460 (Citation omitted). A reviewing court cannot substitute its own judgment or interfere absent a showing by the appellant that the board was arbitrary and capricious or abused its discretion. Id. On appeal, a person who opposes a zoning board's decision bears the burden of proof that the decision was arbitrary, capricious and unreasonable. Id., 97-1200 at 8-9, 716 So.2d at 433 (Citation omitted).
The plaintiffs argue on appeal that Mr. Herrera did not have a hardship because he only demonstrated inconvenience and a self-imposed economic hardship. They argue that Mr. Herrera wants to convert rental property to a mini-mart. However, Mr. Herrera stated at the hearing that the property has been empty a few years. The plaintiffs further argue that the board was arbitrary and capricious in granting the variance because landscaping in the rear serves no purpose and defeats the intent of the CZO.
We begin our analysis with the landscape ordinance's "alternative compliance" provisionthe specific portion of the CZO applicable to this case. We conclude that the board was not arbitrary or capricious or abused its discretion in granting "alternative compliance" to the landscaping ordinance. Mr. Herrera meets the condition to allow such a grant due to "spatial limitations" because he cannot meet the requirements for parking and at the same time meet the landscaping requirements. In addition, the board pointed out that the reduction of the requirements of that section was below 50%, which is in conformance with the "alternative compliance" provision.
We further find that the board was not arbitrary and capricious or abused its discretion in evidently concluding that Mr. Herrera was entitled to a variance under the general CZO provisions and the statute. Under the general CZO provisions, Mr. Herrera showed that a strict application of the terms of the ordinances would impose upon him unusual and practical difficulties or particular hardship and not mere inconvenience and that the surrounding property would be properly protected.
The hardship which justifies granting a variance must stem from the application of the ordinance to the property in question and not from actions of the applicant which amount to self-induced hardship. Gardner v. City of Harahan, 504 So.2d 1107, 1110 (La.App. 5 Cir.1987) (Citation *213 omitted). As the board noted, this is a neighborhood in transition. When Mr. Herrera purchased the property, it was residential. Now, it is neighborhood commercial. The zoning change was not from Mr. Herrera's actions and therefore not a self-induced hardship.
In Times Picayune Pub. Corp. v. City of New Orleans, 316 So.2d 147 (La.App. 4 Cir.1975), the Fourth Circuit stated that the board must not rely solely on economic considerations in granting a variance. It noted, however, that "almost all matters coming before a zoning tribunal have some financial implications." Id., 316 So.2d at 149.
In determining whether it should grant a variance or not, a zoning board has no general rule to follow as to what constitutes a hardship or unusual and practical difficulties sufficient to authorize a variance. Cerminaro v. Jefferson Parish Zoning Appeals Bd., 02-1041, p. 5 (La.App. 5 Cir. 2/11/03) 838 So.2d 193, 195 (Citation omitted). It must determine each case on its own merits and consider all relevant factors. Id.
In this case, the economic factor is not the sole consideration. Mr. Herrera has demonstrated a hardship in using the property for its permitted and intended use because he cannot comply with the requirements of both the parking and the landscape ordinances. The board allowed Mr. Herrera to place the landscaping across the back of the property in order to meet the intent of the ordinance. The intent of the landscaping ordinance is to protect and enhance the community's environmental, economic, and aesthetic resources. Its purpose is for water conservation, aesthetics, and environmental quality. The plaintiffs argued that the placement of the landscaping at the rear of the property is meaningless. We find, however, that the board was not arbitrary and capricious or abused its discretion in merely placing more landscaping across the rear of the property because by doing so, the board was able to alternatively comply with the intent and purpose of the landscaping ordinancethe intent of which was not to be so specific as to inhibit creative development. Article XX, Section 20.09.01(f)(1). The variance does not thwart the purposes of the CZO.
Factors present in this case also comport with La. R.S. 33:4727(C)(3). Here, the "alternative compliance" provision allowed the spirit of the landscaping ordinance to be observed, public safety and welfare secured in this neighborhood in transition, and substantial justice done.
Accordingly, the trial judge did not err in affirming the board's decision.

Security for Costs
The trial judge granted the board's pretrial motion seeking to have the plaintiffs post a bond. The plaintiffs argue that they should not have to post a bond to appeal the board's alleged erroneous decision. They argue that the board is a public body but it does not have public funds to protect. They also argue that they were unaware of Kenner citizens ever having to post a bond to appeal the board's decision.
On June 2, 2009, the plaintiffs appealed the board's decision. Twenty days later, on June 22, 2009, the board filed a motion for security for costs requesting that the plaintiffs post security pursuant to La. R.S. 13:4522. On that day, the trial judge signed an ex parte order that ordered the plaintiffs to post bond in the amount of $500 to secure the repayment of all costs expended by the board. The court further ordered that no further proceeding be had in the matter until such security had been furnished.
*214 The record does not contain the bond. However, it is undisputed that the bond was posted. Also, it is apparent that the case proceeded to a final judgment.
The plaintiffs did not file a motion to traverse the setting of the bond nor did they seek a supervisory writ from the ruling. Rather, on August 25, 2009, two months after the court ordered the bond, the plaintiffs filed a memorandum in opposition to the motion. The memorandum did not ask for a motion hearing and there was no order attached. According to the minutes, a motion hearing was held one day later on October 26, 2009. The minutes do not reflect that a motion to traverse the bond was set for hearing. It also reflects that the court ordered the parties to submit memoranda with stipulations and that it would rule seven days after the board had submitted its memorandum. Seven days after the board filed its memorandum, the court rendered a final judgment. The judgment recited that the matter had come for hearing on August 26, 2009 on the following: petition for permanent injunction and appeal, the board's motion to exclude witness and exhibit lists, the board's exception of no cause of action, and Mr. Herrera's exception of no cause of action. The trial judge stated that on August 26, 2009, it had sustained Mr. Herrera's exception of no cause of action and that it took the zoning appeal under advisement, ordering the remaining parties to submit the record of the proceeding below and to file their stipulations and memoranda of authorities. The court ruled that after considering the record and law, it affirmed the board's decision. There is no mention in the final judgment that a motion to traverse the bond was considered by the court. The only mention of the bond is in the court's reasons for judgment. In its reasons for judgment, the court explained that the $500 appeal bond was reasonable and not restrictive of the plaintiffs' access to the courts.
"[I]t is well settled that a trial court's judgment and reasons for judgment are two separate and distinct legal documents, and appeals are taken from the judgment, not the written reasons for judgment." McCalmont v. Jefferson Parish Sheriff's Office, 99-940, p. 6 (La.App. 5 Cir. 1/12/00), 748 So.2d 1286, 1290, writ denied, 00-0679 (La.4/20/00), 760 So.2d 1160, (Citations omitted). See also: La. C.C.P. art. 1918.
Therefore, we conclude that the plaintiffs' opposition to the bond was never set for hearing and there was no ruling from the trial court in that regard. Consequently, the bond issue is not properly before this Court upon appeal.
Even so, the opposition came too late. The order of the court granting the motion for security for costs is an interlocutory judgment. Johnson v. Kerry Brown, LLC, 06-925, p. 4 (La.App. 5 Cir. 3/13/07), 956 So.2d 3, 5. If, under La.R.S. 13:4522, a party failed to pay security in accordance with a court order and his case is dismissed, then the matter would be final and appealable. Id.
The statute relied upon by the board, La. R.S. 13:4522, pertinently provides that ["]the defendant before pleading in all cases may by motion demand and require the plaintiff ... to give security for the cost in such case, and on failure to do so within the time fixed by the court such suit... shall be dismissed without prejudice[.]" (Emphasis added).
We do not determine whether the statute applies to this zoning appeal. However, if so, the posting of the security allowed the plaintiffs' appeal to go forward to a final judgment without being dismissed. It would be unfair to allow the plaintiffs to abide by the order to post the bond, try the case, and then, after an adverse judgment, *215 complain it should not have posted the bond. That procedure does not allow the board an opportunity for a contradictory hearing. It also does not allow the district court or the appellate court to remedy an alleged error before the matter proceeds to final judgment. See: Whitson v. American Ice Co., 164 La. 283, 113 So. 849, 851 (La.1927) (Court annulled order setting bond but reserved to the defendant the right, on a proper showing, to demand, now or whenever the necessity may arise, security for any court costs which the defendant may actually have to incur or be responsible for in advance of a final judgment condemning either party to pay such costs.).
If the plaintiffs wished to complain about the ruling, they should have done so prior to the district court's ruling on the merits of the appeal either by a timely motion to traverse or by supervisory writs. In many instances our appellate courts have considered applications for writs from orders complaining the La. R.S. 13:4522 bond should not have been ordered. See, for example, Vines v. Vines, 379 So.2d 1219 (La.App. 2 Cir.1980); Williams v. London, 370 So.2d 518, 519, n. 1 (La.1979) (reviewing history); Carter v. Phillips, 325 So.2d 337 (La.App. 3 Cir.1975), certiorari granted, 326 So.2d 367 (La.1976), cause remanded, 337 So.2d 187 (La.1976); Romero v. Romero, 232 So.2d 572 (La.App. 3 Cir.1970), overruled on other grounds by Carter v. Phillips, 325 So.2d 337 (La.App. 3 Cir.1975), certiorari granted, 326 So.2d 367 (La.1976), cause remanded, 337 So.2d 187 (La.1976).
Therefore, even if there had been a ruling before this Court, the plaintiffs' acquiescence in the ruling constitutes a waiver.

Conclusion
For the reasons assigned, the judgment appealed from is affirmed. All costs of this appeal to be paid by Plaintiffs-Appellants.
AFFIRMED.
NOTES
[1] The following plaintiffs/appellants filed suit: Glenn L. Freeman, Calvin W. Freeman, Bob Carver, Diana Carver, Earl Jones, Lillian Jones, Elsie M. Vega, Michael Borey, Aurora Valdez, Paula de la Cruz, Perry Doty, Vivian Doty, Romero J. Quiroz, Wilson Doty, Mike Doty, Dennis Bauer, Yvonne Bauer, Thomas A. Reis, Donna J. Reis, and Nicholas Guillot.
[2] Before proceeding to a decision on the merits of the zoning appeal, the district court sustained Mr. Herrera's exception of no cause of action. The judgment sustaining the exception is not the subject of this appeal.