GAIDRY, J.
 

 |2A judgment debtor appeals a judgment reviving a judgment against him on a promissory note. Converting his suspen-
 
 *1122
 
 sive appeal to a devolutive appeal, we affirm the judgment.
 

 FACTUAL AND PROCEDURAL HISTORY
 

 On April 29, 1981, Fidelity National Bank of Baton Rouge (Fidelity) filed suit against the defendant, Van B. Calhoun, on a promissory note in the principal amount of $17,646.58, with accrued interest and costs. The defendant was personally served with citation and a certified copy of the petition on August 12, 1981. A preliminary judgment by default was entered on September 3, 1981, and was confirmed and signed on September 11, 1981.
 

 On February 8, 1990, Hibernia National Bank (Hibernia), as successor to Fidelity, filed a petition to revive the original judgment. The defendant was personally served with citation and a certified copy of the petition to revive the judgment on October 1, 1991. A preliminary judgment by default was entered on July 1, 1992, and was confirmed and signed on October 22, 1992. A motion for a judgment debtor examination was filed on July 5, 1994, and the defendant was ordered to appear for examination on August 10, 1994. However, the defendant was never served with notice of the order for examination, as the sheriff was unable to locate him at his last-known residence or his last-known place of employment.
 

 On September 18, 2002, a second petition to revive judgment was filed by The Cadle Company (Cadle). This petition listed “Hibernia National Bank in Baton Rouge” as the plaintiff in the suit title, with the docket number and defendant’s name unchanged. The defendant was personally served with citation and a certified copy of that petition on | ^October 7, 2002. A preliminary judgment by default was entered on November 18, 2002. The default judgment was confirmed and signed on May 29, 2003. However, notice of the judgment was not mailed to the defendant until May 8, 2008.
 

 On June 6, 2008, the defendant filed a motion for a suspensive appeal, seeking to appeal the judgment of May 29, 2003.
 
 [1]
 
 A surety bond, dated and signed by the defendant and his surety on February 18, 2008, with its amount blank, was also filed on June 6, 2008. The order of appeal was signed by the trial court on June 11, 2008, fixing the amount of the suspensive appeal bond at $85,000.00. The required amount of the bond was never placed on the bond.
 

 On November 26, 2008, Cadle filed a request in this court that we take judicial notice of certain facts relating to the changes of name and status of Fidelity and Hibernia.
 

 ASSIGNMENTS OF ERROR
 

 We summarize the substance of the defendant’s assignments of error on the part of the trial court as follows:
 

 (1) The trial court erred in rendering judgment reviving the judgment against the defendant, as the evidence did not establish Cable’s status as an interested party entitled to revival of the judgment and its attorney’s authority and status to seek such relief on behalf of any party.
 

 (2) The trial court erred in rendering the default judgments of 1992 and 2003, reviving the original judgment, since the supporting affidavits were defective and contradictory.
 

 |4(3) The trial court erred in rendering the default judgments of 1992 and 2003,
 
 *1123
 
 reviving the original judgment, since the defendant was not served with notice of judgment as required by La. C.C.P. art. 1913(C).
 

 DISCUSSION
 

 The Nature of the Appeal
 

 The furnishing of bond or security is a necessary step in the process of sus-pensive appeal, and certain definite requirements apply to appeal bonds.
 
 Guilliot v. City of Kenner,
 
 326 So.2d 359, 362 (La.1976). Louisiana Code of Civil Procedure article 2124(E) sets forth the substantive requirements of a suspensive appeal bond:
 

 A suspensive appeal bond shall provide, in substance, that it is furnished as security that the appellant will prosecute his appeal, that any judgment against him will be paid or satisfied from the proceeds of the sale of his property, or that otherwise the surety is liable for the amount of the judgment.
 

 See also
 
 La. C.C.P. arts. 5121 and 5122.
 

 An appellate court does not have jurisdiction to review or consider objections to the form, substance, and sufficiency of an appeal bond, if it otherwise complies substantially with the legal requirements; such jurisdiction is retained by the trial court. La. C.C.P. art.2088(5);
 
 Guilliot,
 
 326 So.2d at 362-63. However, an appellate court does have the authority to determine whether what purports to be a bond is in fact a bond, or whether the defects of the purported bond are so glaring and so numerous that it constitutes no bond at all.
 
 Id.
 

 [2]
 

 On our review of the record in this matter, we note that the defendant’s sus-pensive appeal bond is seriously deficient in a number of Rrespects. The surety bond initially recites that the defendant “has this day [February 18, 2008] obtained
 
 an order from the 19th Judicial District Court for the Parish of East Baton Rouge appointing him as administrator
 
 in the suit entitled
 
 Hibernia National Bunk v. Van B. Calhoun No. 24.6-167 Div. “H”
 
 on the docket of that court;” and then describes the obligation undertaken in the following terms:
 

 We, the undersigned principal and surety, do by these presents, firmly bind ourselves to be responsible
 
 for such damages as the [sic] any party may recover against the said VAN B. CALHOUN in case it should be decided that the said order was wrongfully obtained,
 
 and for the payment of which we,
 

 VAN B. CALHOUN, as principal, a resident of the Parish of Livingston, and TERRY O’NEAL, as surety, a resident of the Parish of Livingston, are by these presents, held firmly bound unto [the clerk of court], and his successors in office, in the full sum of $_, lawful money of the United States of America.
 

 (Emphasis supplied.) Beneath the signatures of the defendant and Mr. O’Neal appear their affidavits, providing as follows:
 

 TERRY O’NEAL, being duly sworn, says that he is worth over and above all his debts and obligations $_in assets valued in excess of the amount bonded....
 

 [[Image here]]
 

 
 *1124
 
 VAN B. CALHOUN, being duly sworn, says he is informed that the Surety on this bond is worth over and above his debts and obligations in assets valued in excess of the amount bonded, the amount for which he has bound himself in this bond.
 

 No “order” appointing the defendant as “administrator,” as described in the bond, is present in the record. Given the description of the obligation purportedly undertaken (payment of an indeterminate amount of “damages” for wrongfully obtaining an order of administration), the defendant’s attorney seems to have prepared the bond using a form for a tutor’s or | (¡curator’s bond. While the premature date of the bond and the absence of a monetary amount in the blanks are not fatal to the defendant’s suspensive appeal, the substance of the expressed obligation is. It simply does not comply with the plain, mandatory language of La. C.C.P. art. 2124(E). This bond is not merely deficient in form; in substance, it is no appeal bond at all.
 

 Since the procedural elimination of the requirement for bond for devolutive appeals, our jurisprudence has recognized that the failure to file the required bond for a suspensive appeal does not deprive an appellate court of jurisdiction, as long as the appellant has met the requirements for a devolutive appeal. In such event, the suspensive appeal should be converted to a devolutive appeal.
 
 R.G. Claitor’s Realty v. Rigell,
 
 06-2336, p. 5 (La.App. 1st Cir.5/4/07), 961 So.2d 458, 461,
 
 writ denied,
 
 07-1214 (La.9/21/07), 964 So.2d 340;
 
 Clement v. Graves,
 
 04-1831, p. 6 (La.App. 1st Cir.9/28/05), 924 So.2d 196, 200. The defendant obtained an order of appeal within the requisite period for taking a devolutive appeal.
 
 See
 
 La. C.C.P. arts. 2087(A) and 2088. Thus, we dismiss the appeal as a suspensive appeal, but maintain the appeal as a devolutive appeal.
 
 See R.G. Claitor’s Realty,
 
 06-2336 at p. 5, 961 So.2d at 461-62.
 

 Request for Judicial Notice
 

 Cadle has requested that we take judicial notice of the following facts, supported by attached certificates of the United States Comptroller of the Currency: (1) On July 1, 1986, Fidelity changed its name to Hibernia National Bank of Baton Rouge; and (2) Effective January 1, 1987, Hibernia National Bank of Baton Rouge merged into Hibernia, with Hibernia being the surviving entity.
 

 Louisiana Code of Evidence article 201 governs judicial notice of adjudicative facts, defined as facts “normally determined by the trier of 17fact.” La. C.E. art. 201(A). A court shall take judicial notice upon request if supplied with the information necessary for the court to determine that there is no reasonable dispute as to the fact. La. C.E. art. 201(D). A party may request judicial notice at any stage of the proceeding. La. C.E. art. 201(F).
 

 Louisiana Code of Evidence article 202(B)(1)(e) further directs a court, if so requested by a party, to take judicial notice of the “[rjules and decisions of boards, commissions, and agencies of the United States ... which have been duly published and promulgated and which have the effect of law within their respective jurisdictions.” Judicial notice of the foregoing legal matters may be taken at any stage of the proceedings. La. C.E. art. 202(D). These provisions authorize us to take judicial notice of the Comptroller of the Currency’s approval of Fidelity’s change of name to Hibernia National Bank in Baton Rouge and the subsequent merger of Hibernia National Bank in Baton Rouge into Hibernia.
 
 See Premier Bank v. Daigle,
 
 599 So.2d 503, 504 (La.App. 3rd Cir.1992). We may further take judicial notice of the
 
 *1125
 
 legal effect of the name change and merger.
 
 See
 
 La. C.E. art. 202(A).
 

 We grant Cadle’s request, and further take judicial notice of the legal effect of the adjudicative facts noticed, such effect being that Hibernia became the owner of Fidelity’s original default judgment against the defendant effective January 1, 1987.
 
 See
 
 12 U.S.C. § 215(e) and La. R.S. 6:355(D).
 

 Cadle’s Status as an “Interested Party” and its Attorney’s Status
 

 In his first assignment of error, the defendant challenges Cadle’s status as an “interested party” entitled to seek revival of the money judgment. Louisiana Civil Code article 3501 establishes a prescriptive period of ten years from its signing for a money judgment. It further | ¡¡provides that “[a]ny party having an interest in a money judgment may have it revived before it prescribes,” and that the revived judgment in turn prescribes in ten years and may itself be revived. At the time Cadle filed its petition to revive the judgment, and at the time its default judgment was confirmed, La. C.C.P. art.2031 provided as follows:
 

 A money judgment may be revived at any time before it prescribes by an interested party in an ordinary proceeding brought in the court in which the judgment was rendered.
 

 The judgment debtor shall be made a defendant in the proceeding to revive the judgment, unless he is dead, in which event his legal representative or legal successor shall be made a defendant.
 

 A judgment shall be rendered in such a proceeding reviving the original judgment, unless the defendant shows good cause why it should not be revived.
 

 This article has since been amended to permit an interested party to seek revival of a judgment by filing an
 
 ex parte
 
 motion in the court and the same original suit in which the judgment was rendered.
 
 [3]
 
 The present language of La. C.C.P. art. 2031 clarifies the term “interested party” as including “the holder and owner of the judgment.” As we have judicially noticed, Hibernia was legally the successor in interest and, for all practical purposes, the same entity as Fidelity. Thus, Hibernia unquestionably was a “party having an interest in a money judgment” at the time it filed its petition to revive the original judgment.
 
 [4]
 

 Hibernia, as the owner of the money judgment, had the right to assign or transfer the judgment, as a property right and asset.
 
 See
 
 La. C.C. art. 2642. Louisiana Civil Code article 2643 provides that “[t]he assignment of a | aright is effective against the debtor ... only from the time the debtor has actual knowledge, or has been given notice of the assignment.” No particular form is required for the notice of assignment of the judgment.
 
 See
 
 La. C.C. art. 2643, Revision Comments—1993, (a). It is only necessary that the debtor be informed that his former creditor has divested himself of all rights to the thing assigned.
 
 Peoples Bank & Trust Co., Natchitoches v. Harper,
 
 370 So.2d 1291,
 
 *1126
 
 1294 (La.App. 3rd Cir.),
 
 writ denied,
 
 371 So.2d 1330 (La.1979).
 

 Cadle’s petition to revive the judgment, filed on September 18, 2002, was filed in the suit record of Fidelity’s original action against the defendant, and bore the same civil docket number. The petition to revive incorrectly described the 1992 judgment reviving the original judgment as being rendered in Cadle’s favor, rather than in Hibernia’s favor, but otherwise accurately described the 1992 judgment by date of rendition, docket number, judgment amount, and original suit title (bearing Fidelity’s name as plaintiff). Although the plaintiff in the suit title was designated as “Hibernia National Bank in Baton Rouge,” the petition to revive was brought in Cadle’s name as plaintiff, and Cadle affirmatively alleged that it was “entitled to have this judgment revived before it prescribes.” The defendant was personally served with citation and a certified copy of Cadle’s petition on October 7, 2002. Such service was sufficient to constitute notice of the assignment of the judgment by Hibernia to Cadle, pursuant to La. C.C. art. 2643.
 
 See Robert Haynes Tarrant, Inc. v. Holden,
 
 19 La.App. 598, 599, 141 So. 100 (La.App.Orl.Cir.1932).
 
 [5]
 

 | mThe default judgment in favor of Cadle, reviving the 1992 judgment of revival, recites that the trial court was presented with “due proof in support of the plaintiffs demands.” In support of the judgment, Cadle introduced the affidavit of Vikki Dales, an account officer with Cadle, who stated that Cadle was “the owner of the judgment previously entered herein by assignment, for good and valuable consideration, from [Hibernia], against the defendant. ...” If Cadle’s petition was ambiguous due to the allegation that the 1992 judgment was rendered in Cadle’s favor, rather than Hibernia’s favor, the affidavit conclusively resolved that ambiguity, and constituted
 
 prima facie
 
 proof of Cadle’s status as an interested party and its claim.
 

 It was not procedurally necessary for either Hibernia or Cadle to file a motion to substitute itself as party plaintiff in order to revive the original judgment against the defendant. Fidelity’s claim was reduced to an executory money judgment by the confirmation of the original default judgment and the lapse of the delay for a suspensive appeal. A civil action is a
 
 demand
 
 for the enforcement of a legal right. La. C.C.P. art. 421. A judgment is the determination of the rights of the parties in an action. La. C.C.P. art. 1841. Thus, once an action has been adjudicated by a final, executory judgment, its litigation on the merits and status as a civil “action” are at an end.
 
 See Mayfair Sales, Inc. v. Sams,
 
 339 So.2d 1277, 1279 (La.App. 1st Cir. 1976),
 
 writ denied,
 
 342 So.2d 676 (La.1977). Louisiana Code of Civil Procedure articles 801 through 807, governing substitution of parties, apply only to
 
 pending
 
 civil actions, not actions reduced to judgment.
 
 See
 
 La. |nC.C.P.
 
 *1127
 
 arts. 801 and 821. Once its claim was reduced to judgment, Fidelity was technically no longer a plaintiff in a civil
 
 action,
 
 but a judgment creditor with the right to execute upon the judgment upon its becoming final and definitive. The same conclusion is warranted with respect to Hibernia upon rendition of the judgment reviving the original judgment.
 

 The defendant has cited no authority in support of his challenge to the authority of Hibernia’s attorney and Ca-dle’s attorney to file pleadings on behalf of their respective clients, nor any authority in support of his implied objection to the change in the plaintiffs name from Fidelity to Hibernia National Bank in Baton Rouge in the second petition to revive. If the defendant wished to raise such objections, he could have filed a dilatory exception, on the grounds of the petition’s nonconformity with the requirements of La. C.C.P. art. 891 and its vagueness or ambiguity.
 
 See
 
 La. C.C.P. art. 926(A)(4), (5). Louisiana Code of Civil Procedure article 891 requires a petition to comply with La. C.C.P. arts. 853 and 863, among other requirements. Louisiana Code of Civil Procedure article 853 sets forth the requirement that every pleading bear the title of the action, which “shall state the name of the first party on each side with an appropriate indication of other parties.” Louisiana Code of Civil Procedure article 863(A) specifically requires that “[e]very pleading of a party represented by an attorney shall be signed by at least one
 
 attorney of record
 
 in his individual name, whose address shall be stated.” (Emphasis supplied.) Having failed to raise his procedural objections relating to the title of the action and the attorneys’ status as attorneys of record in the petition through a dilatory exception, those objections were waived.
 

 Additionally, to the extent that the defendant seeks to challenge the legal validity of the default judgment, based upon the supposed lack of the |12attorney’s enrolled status and authority, we find no merit to his argument. The defendant incorrectly seems to assume that an attorney may become an “attorney of record” only through the procedural vehicle of a motion to enroll in that capacity or a motion to substitute an attorney. An “attorney of record” is “[t]he lawyer who appears for a party in a lawsuit and who is entitled to receive, on the party’s behalf, all pleadings and other formal documents from the court and from other parties.”
 
 Black’s Law Dictionary
 
 138 (8th ed.2004). When an attorney files an initial pleading on behalf of his client, listing himself as attorney in compliance with La. C.C.P. art. 863, he assumes the capacity of “attorney of record.” It is only when an attorney enrolls as counsel after the petition or first responsive pleading is filed that a separate “notice of enrollment” must be filed. Comment, La. Dist. Ct. R. 9.12;
 
 Tasch, Inc. v. Horizon Group,
 
 08-0635, p. 2 (La.App. 4th Cir.1/7/09), 3 So.3d 562, 563. In this case, both Hibernia’s attorney and Cadle’s attorney filed initial pleadings, the petitions to revive, on behalf of each client as an “interested party” under La. C.C.P. art.2031. There was no need for either attorney to seek to enroll or substitute himself for Fidelity’s attorney, since Fidelity (in its original capacity and name) was no longer an “interested party” or “holder and owner of the judgment” at the time each petition to revive was filed.
 
 See
 
 La. C.C.P. art.2031.
 

 The defendant’s first assignment of error has no merit whatsoever.
 

 Sufficiency of the Supporting Affidavits
 

 The defendant contends that the 1992 judgment of revival and the 2003 judgment of revival were both erroneous, in that the
 
 *1128
 
 supporting affidavits were defective and self-contradictory.
 

 We will first address the defendant’s argument concerning the 1992 judgment of revival. The defendant emphasizes that the supporting affidavit 11sof Hibernia’s officer, Calvin Talbot, incorrectly stated at one point that the original 1981 judgment was rendered against “Defendant, Calvin Talbot,” rather than the actual defendant. This obviously inadvertent error would not render the affidavit insufficient, however, as the affidavit itself bears the suit title listing “Van B. Calhoun” as the sole defendant, the subject matter of the affidavit is described as “the loan account of VAN B. CALHOUN,” the last paragraph of the affidavit refers to “the defendant, VAN B. CALHOUN,” and all other documents in the suit record refer to only that defendant. Additionally, even assuming that the affidavit’s error would somehow render the 1992 judgment null, such nullity would constitute, at most, only a relative nullity. The same conclusion is warranted regarding the defendant’s argument challenging Hibernia’s status as an interested party. As the defendant did not bring an action in the trial court to annul the 1992 judgment within a year of the discovery of the claimed errors (presumably October 7, 2002 at the latest, the date of service of the second petition to revive), he could not raise that issue even in defense of the second petition to revive.
 
 See
 
 La. C.C.P. art. 2004(B). As Cadle has correctly pointed out, the defendant may not now collaterally attack the 1992 judgment.
 
 See Gilbert v. Pearson,
 
 478 So.2d 937, 939-40 (La.App. 3rd Cir.1985),
 
 writ denied,
 
 482 So.2d 629(La.1986).
 

 Although the defendant expressly contends that Vikki Dales’s affidavit filed by Cadle in support of the 2003 judgment was defective and contradictory, his brief does not address or identify any defect or contradiction in the affidavit, and we can find none. The defendant instead challenges only the technical error in Cadle’s petition, describing the 1992 judgment as being rendered in its favor. We have previously addressed and rejected that challenge.
 

 114The defendant’s second assignment of error has no merit.
 

 Notice of Judgment
 

 The defendant contends that the trial court failed to serve him notice of the 1992 judgment of revival pursuant to La. C.C.P. art. 1913(C), and that such failure rendered it unenforceable and in turn invalidated the 2003 judgment reviving the 1992 judgment. We disagree. As emphasized by Cadle, the defendant was personally served with citation and a certified copy of Hibernia’s petition to revive. Although La. C.C.P. art. 1913(C) presently requires the clerk of court to mail notice of a default judgment to a defendant served personally with the petition, it did not so require at the time the 1992 judgment was rendered.
 
 See
 
 Acts 2001, No. 512, § 1, effective August 15, 2001.
 
 See also
 
 Acts 1999, No. 1263, § 1, effective January 1, 2000.
 

 Finally, the defendant contends that the trial court did not serve him notice of the 2003 judgment of revival in favor of Cadle. In his motion for suspensive appeal filed on June 6, 2008, the defendant also stated that “[t]he clerk’s record does not contain any notice of mailing of the judgment to the defendant.” The record reflects otherwise. On May 8, 2008, notice of judgment was mailed to the defendant at the same address at which he was personally served with Cadle’s petition to revive.
 
 See
 
 La. C.C.P. art. 1913(C).
 

 The defendant’s third assignment of error has no merit whatsoever.
 

 CONCLUSION
 

 In summary, the record supports the finding that Cadle adequately proved its
 
 *1129
 
 status as an “interested party” and the “holder and owner of the judgment.” The defendant did not file a contradictory motion in the trial court seeking to have the judgment of revival annulled on the grounds that the judgment had been satisfied prior to the filing of the motion to revive it, 116as authorized by La. C.C.P. art. 2031(B). The defendant’s appeal has no merit, and Cadle is entitled to its judgment, which is now executory due to the patent nullity of the purported appeal bond.
 

 The judgment of the trial court in favor of the plaintiff, The Cadle Company, and against the defendant, Van B. Calhoun, is affirmed. All costs of this appeal are assessed to the defendant.
 

 SUSPENSIVE APPEAL CONVERTED TO DEVOLUTIVE APPEAL; JUDGMENT AFFIRMED.
 

 [1]
 

 . Curiously, although the motion for the sus-pensive appeal was filed on June 6, 2008, its certificate of service, signed by the defen-danl's attorney, was dated February 25, 2008, over three months prior to the judgment being mailed.
 

 [2]
 

 . In its appellate brief, Cadle slates that it has filed a motion in the trial court to test the "sufficiency of the bond and the solvency of the surety.” The record does not reflect the trial court’s disposition of that motion and the current status of the defendant's appeal bond. At any rate, the trial court’s decision is not binding upon our independent review on the issue of the purported appeal bond’s status as such.
 

 [3]
 

 .
 
 See
 
 Acts 2003, No. 806, § 1, effective August 15, 2003, and Acts 2005, No. 205, § 1, effective January 1, 2006.
 

 [4]
 

 . To the extent that the defendant may have attempted to challenge Hibernia’s status as an interested party with regard to the 1992 judgment of revival, we will further address that point in our discussion of the defendant’s second assignment of error.
 

 [5]
 

 . Insofar as the defendant's first assignment of error might be construed to constitute a challenge to the adequacy of notice of assignment of the judgment, it must also be rejected on procedural grounds. One obvious purpose of the notice required by La. C.C. art. 2643 is protection of the assignee against payments made in error by the debtor to the assignor.
 
 Hubbs v. Gramm-Bernstein Co.,
 
 12 Orleans App. 292 (La.App. 1915). Another obvious purpose is protection of the debtor against erroneous or duplicative payment.
 
 See
 
 La. C.C. art. 2644. Lack of notice under La. C.C. art, 2643 is thus an affirmative defense that must be specially pleaded by a defendant debtor; it is not fundamental notice for purposes of due process. Not having answered Cadle’s petition or otherwise raised such a defense in the trial court, the defendant may not urge that defense for the first time on appeal.
 
 See Costello v. Hardy,
 
 03-1146, p. 16 n. 13 (La. 1/21/04), 864 So.2d 129, 142 n. 13.