STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

2025 CA 0314

**RONALD JOHNSON**

**VERSUS**

**ONSHORE CONSTRUCTION COMPANY, L.L.C., and
ABC INSURANCE COMPANY**

Judgment Rendered: ___JAN 0 9 2026___

* * * * * * *

On Appeal from the 32nd Judicial District Court
In and for the Parish of Terrebonne
State of Louisiana
Trial Court Docket Number 183282, Div. "A"

Honorable Timothy C. Ellender, Judge Presiding

* * * * * * *

Mary W. Riviere                     Counsel for Plaintiff/Appellee,
Hunt B. Downer                      Ronald Johnson
David C. Pellegrin, Jr.
Joseph L. Waitz, III
Ellen Daigle Doskey
Gary Williams, Jr.
Houma, Louisiana


R. Todd Musgrave                    Counsel for Defendant/Appellant,
Adam J. Boyer                       Onshore Materials, LLC and
New Orleans, Louisiana              Defendant, Onshore Construction
                                    Company, LLC


David T. Butler                     Counsel for Defendant/Intervenor,
Baton Rouge, Louisiana              Bridgefield Casualty Insurance
                                    Company, Inc.

* * * * * * *

**BEFORE: THERIOT, PENZATO, AND BALFOUR, JJ.**

Theriot, J., concurs

Balfour, J.J., concurs with reasons

**PENZATO, J.**

Defendant, Onshore Materials, L.L.C., appeals a default judgment rendered on February 6, 2024 against it and in favor of plaintiff, Ronald Johnson, awarding Johnson a total of $2,383,000.00, plus interest and costs. For the reasons that follow, we reverse the February 6, 2024 default judgment and remand this matter to the trial court for further proceedings consistent with this opinion.

We deny Johnson's motion to dismiss the appeal; deny in part and deny as moot Onshore Materials' motion to attach appendices; and dismiss Onshore Materials' peremptory exception of prescription, without prejudice.

## FACTS AND PROCEDURAL HISTORY

Ronald Johnson purportedly sustained personal injuries on July 29, 2017, while in the course and scope of his employment with Sugarland Express, L.L.C. d/b/a Arabie Trucking. That day, Johnson was driving an 18-wheeler MAC truck and dump trailer on a temporary access road constructed by Onshore Materials in connection with a land clearing project for Shell Pipeline Company, LP. After the trailer on Johnson's truck was loaded with tree debris by an Onshore Materials employee, Johnson drove forward on the access road.

As Johnson drove off at idle speed, he noticed out of his rearview mirror that the trailer attached to his truck was tilting toward the passenger side. Shortly thereafter, the truck, with the attached trailer, tipped and landed on its passenger side. Johnson, who was not wearing a seat belt at the time, likewise fell to the passenger side of the truck and was knocked unconscious. Nearby workers rushed to Johnson's aid and removed him from the truck by shattering the back glass. Shortly after the incident, Johnson began treating for personal injuries allegedly sustained in the incident.

Johnson filed suit in June 2018 against Onshore Construction Company L.L.C., alleging that his vehicle toppled over because it was overloaded and due to

2

"the condition of the lane being used by the vehicles."[1]  Johnson amended his petition in July 2020 to add Onshore Materials and Certain Underwriters at Lloyds London, as insurer for both Onshore companies, as defendants.  Johnson asserted negligence claims against Onshore Materials for its failure and/or its employees' failure to keep a proper lookout and execute their job duties, carelessly allowing Johnson's truck to become overloaded, failing to provide Johnson with a safe means of ingress/egress for the vehicle he was operating, and failing to keep a proper lookout as the truck was being loaded.

Johnson amended his petition twice more, adding Shell Pipeline and Smith Tank & Steel, Inc. as defendants.  The prayer for relief in Johnson's third and final supplemental and amended petition prayed for judgment in his favor and against Onshore Construction, Onshore Materials, Certain Underwriters at Lloyds London, Shell Pipeline, and Smith Tank "jointly and in solido[.]"

All defendants filed responsive pleadings except Onshore Materials.  On February 1, 2024, Johnson filed a motion for default judgment against Onshore Materials.  A hearing on the motion was held on February 6, 2024, during which Johnson testified and admitted numerous documents into evidence, including depositions, medical records, and the affidavit and report of licensed geotechnical engineer, David Eastwood.  Johnson also admitted a letter dated December 6, 2023, mailed to Onshore Materials' agent for service of process, and delivered via certified mail on December 14, 2023.  The letter stated Johnson's intent to obtain a default judgment against Onshore Materials.

At the conclusion of evidence, the trial court orally granted the motion for default, finding Johnson satisfied all notice requirements of La. C.C.P. art. 1702(A)(4).  The trial court further concluded that Johnson made a *prima facie* case

---

[1] Johnson also named "ABC Insurance Company" as Onshore Construction's fictitious insurer.

as to Onshore Materials' liability and that the actions and neglect of Onshore Materials served as a proximate cause of the damages alleged and urged by Johnson. A written judgment was signed the same day, rendering judgment against Onshore Materials, in favor of Johnson, in the total amount of $2,383,000.00, representing both general and special damages.

Onshore Materials timely filed a motion for new trial, urging both mandatory and discretionary grounds as a basis to reverse or nullify the default judgment.[2] Among other things, Onshore Materials asserted that Johnson's attorneys were aware that R. Todd Musgrave and Adam Boyer, counsel for Onshore Construction, also represented Onshore Materials and failed to comply with the mandatory notice requirements of La. C.C.P. art. 1702(A)(3). The trial court disagreed and, in written reasons, explained its conclusion that Onshore Materials was unrepresented when the motion for default was filed; therefore, Article 1702(A)(3) did not apply. The trial court determined that Johnson was required to and did comply with Article 1702(A)(4). A written judgment denying Onshore Materials' motion for new trial was signed on June 5, 2024, after which Onshore Materials timely filed a motion for suspensive appeal.

## MOTION TO DISMISS APPEAL

Johnson filed a motion to dismiss this appeal or, in the alternative, to convert Onshore Materials' suspensive appeal into a devolutive appeal. Johnson asserts that the third and final appeal bond posted by Onshore Materials did not cure deficiencies in the first two bonds; therefore, the appeal should be dismissed or converted.

Onshore Materials timely filed a motion for suspensive appeal and requested that the trial court set the amount of the bond. The trial court set the bond at $100,000.00, and Onshore Materials posted the bond as instructed on July 1, 2024.

---

[2] Onshore Materials also filed an answer on March 14, 2024, after the default judgment was entered.

4

Johnson filed a motion to increase the bond, which the trial court granted, and the bond amount was increased to the amount of the default judgment. See La. C.C.P. art. 2124(B)(1).

Onshore Materials posted a second appeal bond on July 23, 2024 by filing and attaching a "Rider/Endorsement" to the original bond, increasing the amount of the bond to the amount of the default judgment. In response, Johnson filed a motion to dismiss the suspensive appeal or, in the alternative, to convert Onshore Materials' appeal to a devolutive appeal. As he does here, Johnson argued to the trial court that the purported supplemental, amending, and correcting appeal bond filed by Onshore Materials on July 23, 2024 was irregular, defective, and invalid. See La. C.C.P. art. 5123. Following a contradictory hearing, the trial court denied Johnson's motion to dismiss or to convert and ordered Onshore Materials to correct and/or cure any deficiencies in the form of the suspensive appeal bond by or before October 25, 2024. Onshore Materials timely filed the third appeal bond on October 24, 2024.

In his motion to dismiss or to convert filed with this court, Johnson reurges the arguments made before the trial court, while acknowledging the third appeal bond posted by Onshore Materials is "a suspensive appeal bond" and that "it appears that [Onshore Materials] got it right."

An appellate court's authority is limited to determining whether what purports to be a bond is in fact a bond or whether the defects of the purported bond are so glaring and so numerous that it constitutes no bond at all. See La. C.C.P. arts. 2124(E), 5121, and 5122; *Fidelity National Bank of Baton Rouge v. Calhoun*, 2008-1685 (La. App. 1 Cir. 3/27/09), 11 So.3d 1119, 1123. An appellate court does not have jurisdiction to review or consider objections to the form, substance, and sufficiency of an appeal bond, if it otherwise complies substantially with the legal requirements; such jurisdiction is retained by the trial court. La. C.C.P. art. 2088(A)(5); *Fidelity National Bank of Baton Rouge*, 11 So.3d at 1123.

5

Additionally, in the case of a suspensive appeal, when the appeal bond is not timely filed and the suspensive appeal is thereby not perfected, the trial court maintains jurisdiction to convert the suspensive appeal to a devolutive appeal, except in an eviction case. La. C.C.P. art. 2088(B).

Considering Johnson's admission that the October 23, 2024 suspensive appeal bond is, in fact, a bond, we have no jurisdiction to consider the arguments raised in the motion to dismiss or to convert. See Fidelity National Bank of Baton Rouge, 11 So.3d at 1123. Johnson's motion to dismiss or to convert is denied.

## ISSUES ON APPEAL

We begin by considering Onshore Materials' argument that Johnson failed to comply with La. C.C.P. art. 1702(A)(3), since the failure to comply with the notice requirements of this provision is sufficient grounds to nullify the default judgment pursuant to La. C.C.P. art. 2002(A)(2).[3] See Joffrion v. Spears-Heggelund, 2022-0646 (La. App. 1 Cir. 12/22/22), 358 So.3d 100, 105-06.

At the time the motion for default was filed and decided, La. C.C.P. art. 1702 pertinently stated:[4]

> A. (1) If a defendant in the principal or incidental demand fails to answer or file other pleadings within the time prescribed by law or by the court, and the plaintiff establishes a prima facie case by competent and admissible evidence that is admitted on the record, a default judgment in favor of the plaintiff may be rendered, provided that notice that the plaintiff intends to obtain a default judgment is sent if required by this Paragraph, unless such notice is waived....
>
> * * * *
>
> (3) If an attorney for a party who fails to answer has contacted the plaintiff or the plaintiff's attorney in writing concerning the action after it has been filed, notice that the plaintiff intends to obtain a default judgment shall be sent by certified mail or actually delivered to the party's attorney at least seven days before a default judgment may be

---

[3] Onshore Materials raises several assignments of error; however, we address only two in light of our disposition of this matter.

[4] Louisiana Code of Civil Procedure article 1702(A)(5) was amended by La. Acts 2025, No. 250, §3, effective Aug 1, 2025, to omit the reference to La. R.S. 13:3205 and the affidavit requirement. We do not decide whether this amendment applies retroactively, since we find subparagraph (A)(3) is inapplicable under the facts of this case.

6

rendered.

(4) In cases involving delictual actions where neither Subparagraph (2) or (3) of this Paragraph applies, notice that the plaintiff intends to obtain a default judgment shall be sent by regular mail to the party who fails to answer at the address where service was obtained at least seven days before a default judgment may be rendered.

(5) No default judgment shall be rendered against a defendant when notice is required under Subparagraph (2) or (3) of this Paragraph unless proof of the required notice is made in the manner provided by [La.] R.S. 13:3205.

Louisiana Revised Statutes 13:3205 provides that no default judgment may be rendered against the defendant and no hearing may be held on a contradictory motion, rule to show cause, or other summary proceeding, until thirty days after the filing in the record of the affidavit of the individual who has mailed or delivered "the process" to the defendant.

The evidence admitted into the record in connection with the motion for new trial establishes that counsel for Johnson exchanged emails with Musgrave and Boyer on November 16-17, 2023, regarding Onshore Materials' answer. Musgrave stated that he was "doing this today" (November 17, 2023), referring to Onshore Materials' answer, explaining that it "[s]lipped through the cracks." However, Johnson's counsel, Joseph Waitz, III, testified via affidavit that he had a telephone conversation with Boyer and Musgrave on/about November 21, 2023, during which Musgrave "unequivocally" told Waitz that he could not file an answer on behalf of Onshore Materials and was not sure if he would be assigned the defense as counsel for Onshore Materials.[5]

On January 5, 2024, Waitz emailed Boyer regarding Onshore Materials' answer, which still had not been filed. Waitz advised Boyer that he sent a "letter of default" to Onshore Materials' registered agent for service, which was delivered on

---

[5] Onshore Materials objected to the affidavit as hearsay in its reply memoranda in support of the motion for new trial and during the hearing on the motion. The trial court overruled the objection, and Onshore Materials has not assigned error to this ruling. Therefore, the issue is not before us for review.

December 14, 2023. Waitz advised Boyer, "To date no response." Waitz stated that he wanted to reach out to Boyer as a courtesy and that obtaining a default judgment was "not the route" he wanted to take but he could not hold out any longer. Waitz asked, "Please let me know something when you can." According to Waitz's affidavit, he never received a response to the December 6, 2023 letter or the January 5, 2024 email and, therefore, filed the motion for default.[6]

Waitz's affidavit is uncontroverted and establishes that Musgrave and Boyer acknowledged on November 21, 2023 that they did not represent Onshore Materials. According to the record, nothing had changed in this regard by the time the motion for default was filed on February 1, 2024. Therefore, as of that date, there was no evidence that Musgrave and Boyer represented Onshore Materials.[7] There is likewise no evidence that any other attorney contacted Johnson's counsel on behalf of Onshore Materials prior to February 1, 2024. Consequently, Johnson was not required to comply with La. C.C.P. art. 1702(A)(3). Instead, Article 1702(A)(4) applied and required Johnson to mail notice of his intent to obtain a default judgment to Onshore Materials at the address where service was obtained at least seven days before a default judgment. This was done. Thus, we find no merit in Onshore Materials' argument and further find no basis to nullify the default judgment pursuant to La. C.C.P art. 2002(A)(2). See *Joffrion*, 358 So.3d at 106.[8]

---

[6] Counsel for Onshore Materials asserts that he was engaged in settlement negotiations in December 2023 and January 2024 with Johnson's counsel and that he attempted in good faith to settle Johnson's claims on behalf of Onshore Materials and Onshore Construction. However, the evidence related to these settlement negotiations does not reference Onshore Materials, but only "Onshore," and does not otherwise clearly show counsel was engaged in settlement negotiations on behalf of Onshore Materials.

[7] Onshore Materials correctly notes that Johnson served Musgrave as its counsel on multiple occasions. However, these instances or events took place before the November 21, 2023 conversation between counsel, during which Musgrave advised Waitz he was unsure if he would be assigned as Onshore Materials' defense counsel.

[8] In *Joffrion*, 358 So.3d at 102, plaintiff's counsel stated in plaintiff's motion for default that he was contacted by counsel for defendant and that notice pursuant to La. CCP art. 1702(A)(3) was mailed to defense counsel. This court reversed the default judgment after finding the record on appeal did not contain evidence that notice was sent to defense counsel pursuant to Article 1702(A)(3). *Joffrion*, 358 So.3d at 106. Therefore, *Joffrion* is easily distinguishable. Proof of mailing of the notice of intent to obtain a default judgment is in the record on appeal.

*Failure to Comply with La. C.C.P. arts. 1917 and 1812(C)*

Onshore Materials argues that the default judgment is invalid, because it fails to declare that Onshore Materials was at fault, that such fault was the legal cause of Johnson's alleged damages, and the degree of Onshore Materials' fault expressed as a percentage.

Louisiana Code of Civil Procedure article 1917(B) provides that, in nonjury cases to recover damages for injury, death, or loss, whether or not requested to do so by a party, the court shall make specific findings that shall include those matters to which reference is made in La. C.C.P. 1812(C). These findings include whether the plaintiff, a defendant (or a person for whom it is legally responsible), another party, or a nonparty were at fault, whether such fault was a legal cause of the damages, and the degree of fault attributable to each, expressed in percentage. See La. C.C.P. art. 1812(C).

We agree with Onshore Materials that the trial court failed to comply with La. C.C.P. arts. 1917(B) and 1812(C).[9] However, there is no penalty provided in Article 1917 for failure to comply with the statute's mandate. See *King v. Allen Court Apartments II*, 2015-0858 (La. App. 1 Cir. 12/23/15), 185 So.3d 835, 838, *writ denied*, 2016-0148 (La. 3/14/16), 189 So.3d 1069. Although it is not the function of the judicial branch to insert a penalty provision into a statute where the legislature has not, Louisiana courts have held that the failure to allocate fault is a legal error requiring the appellate court to determine the facts *de novo* and to render a decision on the merits. See *King*, 185 So.3d at 838; *Driver v. Willis Knighton Pierremont Health Center*, 2025-00391 (La. 6/25/25), 412 So.3d 215, 216 (per curiam); *Lacoste*

---

[9] Although Johnson did not specifically address this argument in his appellee brief, he asserts the default judgment was supported by sufficient *prima facie* evidence. Notably, though, he does not cite the evidence, which allegedly supports his claim, nor does he discuss the nature of his claim against Onshore Materials or the condition of the road.

*v. Davenport*, 2023-0279 (La. App. 1 Cir. 4/17/25), 2025 WL 1147543, *4 (unpublished), *writ denied*, 2025-00645 (La. 9/24/25), 417 So.3d 55.

Louisiana Civil Code article 2323 provides that "[i]n any action for damages where a person suffers injury, death, or loss, the degree or percentage of fault of all persons causing or contributing to the injury, death, or loss shall be determined ... regardless of the basis of liability." Article 2323 requires the fault of every tortfeasor responsible for a plaintiff's injuries to be compared, regardless of the legal theory of liability asserted. See *Driver*, 412 So.3d at 216. A negligent joint tortfeasor cannot be liable for more than his degree of fault and cannot be solidarily liable with any other person for damages attributable to the fault of such other person. La. C.C. arts. 2323, 2324; *Gresham v. Production Management Inc.*, 2002-1228 (La. App. 4 Cir. 2/11/04), 868 So.2d 171, 177, *writ denied*, 2004-0650 (La. 5/7/04), 872 So.2d 1082 (affirming the trial court's default judgment allocating 90% fault to the defaulting defendant). Accordingly, we review the default judgment *de novo* due to the legal error made by the trial court in failing to allocate fault.[10] See *Lacoste*, 2025 WL 1147543 at *4; *Boudreaux v. Farmer*, 604 So. 2d 641, 652 (La. App 1 Cir. 1992), *writs denied*, 605 So.2d 1373, 1374 (La. 1992).

The default judgment procedure provides that, when a demand is based upon a delictual obligation, the testimony of the plaintiff with corroborating evidence, which may be by affidavits and exhibits annexed thereto containing facts sufficient to establish a *prima facie* case, shall be admissible, self-authenticating, and sufficient proof of such demand. La. C.C.P. art. 1702(B)(2). A default judgment shall not be different in kind from that demanded in the petition. La. C.C.P. art. 1703. A plaintiff seeking to obtain a default judgment must establish the elements of a *prima facie* case with competent evidence, as fully as though each allegation in the petition had

---

[10] We further note the February 6, 2024 default judgment is a final judgment, which cannot be amended to change its substance. See La. C.C.P. arts. 1841 and 1951.

10

been denied. *Gresham,* 868 So.2d at 175. The plaintiff must present competent evidence that convinces the court that it is probable that he would prevail at a trial on the merits. *Gresham,* 868 So.2d at 175.

To succeed on a negligence cause of action against Onshore Materials arising out of its allegedly substandard conduct, Johnson must satisfy every element of the duty/risk analysis by establishing: (1) Onshore Materials had a duty to conform its conduct to a specific standard; (2) Onshore Materials' conduct failed to conform to the appropriate standard; (3) its substandard conduct was a cause-in-fact of Johnson's injuries; (4) Onshore Materials' substandard conduct was a legal cause of Johnson's injuries; and (5) proof of actual damages. A negative answer to any of these prompts a no-liability determination. Johnson has the burden of proving Onshore Materials' negligence by a preponderance of the evidence. See *Lacoste,* 2025 WL 1147543 at *5. See also La. C.C. art. 2315.

As to vicarious liability, the law is clear that an employer is liable for a tort committed by his employee if the employee was acting within the course and scope of his employment at the time of his commission of the tort. See La. C.C. art. 2320. Thus, Johnson must also satisfy the elements of the duty/risk analysis to establish the tortious conduct of Onshore Materials' employees before Onshore Materials may be held vicariously liable for their negligence.

***Onshore Materials' Direct Liability***

In his first, second, and third supplemental and amending petitions, Johnson alleged that Onshore Materials was in charge of construction operations at Shell Pipeline's facility and was responsible for the erection, maintenance, upkeep, and grading of the lanes for safe ingress and egress by vehicles like his and "failed to properly do so, thereby contributing to the events which resulted in the accident in question." Notably, none of Johnson's petitions identify a condition or defect in the roadway that purportedly caused his truck to tilt, nor does he allege facts to establish

how Onshore Materials failed to properly erect, maintain, keep up, or grade the lanes and how the lanes (access road) did not provide a safe means of ingress and egress.

In his motion for default and memorandum in support, Johnson alleged that Onshore Materials had a duty to ensure the road was properly constructed and capable of withstanding the weight of the machinery and equipment that would utilize it. He maintained that Onshore Materials breached this duty by failing to ensure the road was safe, properly constructed, and capable of withstanding the "extreme weight" of the fully loaded 18-wheeler and dump trailer. Johnson asserted that the "failure of the roadway was the proximate cause of [the] accident at issue."

Johnson offered the testimony of Onshore Materials' superintendent for this project, Nikolaus Lundy, who confirmed the road was not tested to ensure it was safe to drive on. Lundy explained that roads were only tested sometimes, depending on the language of the contract governing the work. Lundy testified that the contract between Shell Pipeline and Onshore Materials did not require testing. When asked whether Onshore Materials had engineers inspect its roads, Lundy testified, "[i]t depends ...." He could not recall an instance where an engineer inspected an access road built as part of a clearing job, unless the road was going to become a public transportation road. This road was not; it was temporary and was eventually removed.

Johnson also offered the affidavit and expert reports of David Eastwood, licensed geotechnical engineer. In two reports, issued in September 2023 and January 2024, Eastwood concluded the access road was not designed and

12

constructed in a workmanlike manner.[11] However, he did not unequivocally identify a condition of the access road – unreasonably dangerous,[12] defective, or otherwise – that, in his opinion, caused this incident or rendered the road unsafe for ingress/egress.

For instance, Eastwood noted the road was not tested or inspected but acknowledged that Louisiana does not have standard specifications governing the construction of a haul road and cited Georgia standards, which suggest inspections should be performed. He further stated the area where the access road was constructed was composed of "very soft organic clay" and opined the "fill placed was not compacted appropriately" but offered no opinion to explain how this purported failure caused or contributed to this incident. He specifically noted, "it is not clear if the bearing capacity failure was the cause of this accident." Eastwood also noted the access road had a sloped edge, but "[t]he depth and angle of this slope are not known."[13] Tellingly, in both reports, Eastwood acknowledged that his investigation was based on a review of documents and occurred more than six years after the incident; therefore, the on-site soil conditions identified in the report "could be different from those at the time of the incident[.]"

---

[11] Every building contract implicitly obligates the contractor to perform the work in a good, workmanlike manner, free from defects in either materials or workmanship, with the work suitable for its intended purpose. See La. C.C. arts. 1994 and 2769; *Caronna v. Outdoor Living, LLC*, 2023-1048 (La. App. 1 Cir. 12/30/24), 403 So.3d 1164, 1179. Johnson was not a party to the contract between Shell Pipeline and Onshore Materials, which governed the construction of the access road. Additionally, proof of failure to perform a contract in a workmanlike manner requires some showing of a want of skill, efficiency, knowledge, or lack of ordinary care in the performance of the work or in the selection of suitable equipment or materials. *AR Brooks Paint Contracting, LLC v. Eunson*, 55,760 (La. App. 2 Cir. 8/21/24), 399 So.3d 670, 675. Whether the access road was constructed in a "workmanlike manner" does not determine whether Johnson satisfied his burden of proof under the duty/risk analysis applicable to his negligence action against Onshore Materials.

[12] For purposes of a cause of action under La. C.C. art. 2317.1, Johnson's petitions alleged that "[t]he facility remained in the custody and control of Shell Pipeline…during the entire construction process."

[13] Johnson was asked whether the road was raised up from the ground around it. He responded, [n]ot that much." Cody Beal, the spotter, was asked whether there was a drop off from the access road; he stated there was "a little slope."

13

Depositions offered by Johnson include testimony from several witnesses on the job site who stated the road was not "too soft" and was "solid" and "in normal condition" when Johnson traversed it. Additionally, Johnson answered "yes" when asked whether the road was wide enough to maneuver his vehicle.

After a *de novo* review of the evidence submitted by Johnson, we find he failed to establish a *prima facie* case of negligence against Onshore Materials. Johnson offered no evidence to establish that Onshore Materials owed and breached a duty to Johnson or that any condition of the access road caused or contributed to this incident.

### *Onshore Materials' Vicarious Liability*

Johnson also maintained that one or more employees negligently failed to "execute his job duties" and carelessly allowed the truck to become overloaded. Two employees were identified in the evidence submitted by Johnson – the spotter and the excavator operator. Cody Beal, the spotter, testified that he was employed by Onshore Construction, not Onshore Materials.[14] However, the excavator operator, Emile Folse, was employed by Onshore Materials. On the date of the incident, Folse was responsible for filling the trailers with tree debris. Folse testified that he knew how much to load – not too much so that trees were above the trailer but not too little so that the ground of the truck was showing – based on many years of experience. Referring to Folse, Johnson testified during his deposition, "I'm sure he know[s] how much to put on the truck."

In his motion for default and memorandum in support, Johnson reurged the allegation that the trailer was not weighed after it was loaded. However, he offered no evidence to show that the weight of the trailer caused it to tip over or that any

---

[14] Johnson testified that, after his trailer was loaded and he began to pull away, Beal walked on the side of his truck, "a little distance" away, and flagged him out toward the gate. Beal did not indicate for Johnson to turn in any direction and, instead, signaled him to go straight. Johnson did not testify or offer other evidence to establish that the directions given to him by the spotter caused his truck and trailer to leave the access road.

action or inaction by Folse caused or contributed to the incident. There is no evidence to establish the weight of the truck or that the weight of the truck exceeded the load capacity of the access road. Johnson testified that he does not know the weight of the material loaded in his truck when the incident occurred or the weight capacity of the trailer.

In June 2020, during his first deposition, Johnson testified that the incident happened so fast that he did not remember what took place. However, he speculated at that time that the "road had to be giving for the truck to go over." When he was deposed again in October 2023, Johnson opined that the trailer was too heavy or the road "wasn't equipped for the load[.]" This evidence is insufficient to establish a *prima facie* case of vicarious liability against Onshore Materials for an alleged tort committed by Folse. See La. C.C.P. art. 1702(A)(1); La. C.C. art. 2320.

After our *de novo* review of the evidence admitted by Johnson in support of the motion for default judgment, we find Johnson is not entitled to a default judgment of liability against Onshore Materials. Contrary to the trial court's conclusion, there is no evidence that any action or inaction by Onshore Materials or its employees served as a proximate cause of the damages alleged and urged by Johnson.

## MOTION TO ATTACH APPENDICES

Onshore Materials filed a motion with this court, requesting to attach appendices to its original brief, including documents not listed in Uniform Rules of Courts of Appeal, Rule 2-12.4(B)(1). The motion is denied as moot as to those documents that Onshore Materials seeks to attach that are already in the record.[15] The motion is denied in part as to the remaining document, specifically Onshore Materials' motion to annul judgment as absolute nullity, which was filed with the

---

[15] This includes the February 6, 2024 default judgment; the transcript from the February 6, 2024 hearing on the motion for default; the notice of judgment for the February 6, 2024 default judgment; the trial court's reasons for ruling on the motion for new trial; and the October 24, 2024 suspensive appeal bond posted by Onshore Materials.

trial court after the order of appeal was signed. Events occurring after rendition of the appealed judgment are not before the court, and the motion to annul judgment is not relevant to the issues raised in this appeal. See *In re Succession of LeBouef*, 2013-0209 (La. App. 1 Cir. 9/9/14), 153 So.3d 527, 530.

## EXCEPTION OF PRESCRIPTION

Onshore Materials urged a peremptory exception of prescription for the first time with this court. See La. C.C.P. arts. 927 and 2163. The exception was raised "out of an abundance of caution" and for consideration if "and only if" the default judgment is upheld. Because we reverse the February 6, 2024 default judgment, we do not consider the merits of the exception and, instead, dismiss the exception, without prejudice.

## CONCLUSION

For the foregoing reasons, we reverse the February 6, 2024 default judgment in favor of Ronald Johnson and against Onshore Materials, L.L.C.

The motion to dismiss filed by Ronald Johnson is denied. The motion to attach appendices filed by Onshore Materials, L.L.C. is denied in part and denied as moot. The exception of prescription filed by Onshore Materials, L.L.C. is dismissed, without prejudice.

The matter is remanded to the trial court for further proceedings consistent with this opinion. All costs of this appeal are cast against appellee, Ronald Johnson.

**MOTION TO DISMISS APPEAL DENIED; MOTION TO ATTACH APPENDICES DENIED IN PART AND DENIED AS MOOT; EXCEPTION OF PRESCRIPTION DISMISSED WITHOUT PREJUDICE; DEFAULT JUDGMENT REVERSED; REMANDED.**

STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

2025 CA 0314

RONALD JOHNSON

VERSUS

ONSHORE CONSTRUCTION COMPANY, L.L.C., AND
ABC INSURANCE COMPANY

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**Balfour, J., concurring.**

I concur in the result reached by the majority; however, I would vacate the trial court's February 6, 2024 default judgment because I believe it is an absolute nullity.

Louisiana Code of Civil Procedure article 1702(A)(3) provides:

> If an attorney for a party who fails to answer has contacted the plaintiff or the plaintiff's attorney in writing concerning the action after it has been filed, notice that the plaintiff intends to obtain a default judgment shall be sent by certified mail or actually delivered to the party's attorney at least seven days before a default judgment may be rendered.

As explained in Official Revision Comments—2021, Comment (a) to La. C.C.P. art. 1702, "[t]he term 'in writing' includes electronic means as well as any other type of writing. If such notice is not given, any default judgment rendered shall be a nullity[.]" Strict compliance with the procedural requirements of La. C.C.P. art. 1702(A) is required in order to obtain a valid default judgment. *See Snyder v. Insurance Company of the State of Pennsylvania*, 2022-0159 (La. App. 1 Cir. 11/30/22), 357 So. 3d 374, 378.

As noted by the majority, on November 17, 2023, R. Todd Musgrave, an attorney, sent an email to counsel for Johnson stating he would be filing an answer on behalf of Onshore Materials, LLC. Therefore, pursuant to the plain language of

La. C.C.P. art. 1702(A)(3), Johnson was required to provide proof that he sent notice of his intent to obtain default judgment to Musgrave by certified mail or actual delivery at least seven days before default judgment could be rendered.[1] As Johnson failed to demonstrate such proof, the February 6, 2024 judgment is an absolute nullity. *See* La. C.C.P. art. 2002(A)(2); *Southeast Dirt, L.L.C. v. D.R. Horton, Inc. - Gulf Coast*, 2024-0724 (La. App. 1 Cir. 12/27/24), 404 So. 3d 90, 99.

---

[1] I find the self-serving and unsupported affidavit from Johnson's counsel, Joseph Waitz, III, submitted in opposition to Onshore Materials, LLC's motion for new trial, to be immaterial. Once Johnson's counsel was provided written correspondence from Musgrave regarding his representation of Onshore Materials, LLC in the underlying suit, he was required to prove compliance with La. C.C.P. art. 1702(A)(3) to obtain default judgment against Onshore Materials, LLC.

2